# No.  12-4671

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

*IN RE PAYMENT CARD INTERCHANGE
FEE AND MERCHANT DISCOUNT
ANTITRUST LITIGATION*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**OBJECTORS-APPELLANTS FIRST DATA CORPORATION,
FIRST DATA MERCHANT SERVICES CORPORATION,
FIRST DATA GOVERNMENT SOLUTIONS, TASQ
TECHNOLOGY, INC., TRS RECOVERY SERVICES, INC.,
TELECHECK SERVICES, INC. AND THEIR AFFILIATES'
PAGE PROOF OPENING BRIEF**

Jason A. Yurasek
Anahit Samarjian
PERKINS COIE LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA  94111-4131
Telephone:  415.344.7000
Facsimile:  415.344.7050

*Attorneys for Objectors-Appellants
First Data Corporation, First Data Merchant Services Corporation, First Data
Government Solutions, TASQ Technology, Inc., TRS Recovery Services, Inc.,
Telecheck Services, Inc. and their affiliates*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, undersigned counsel state as follows:

1.      First Data Government Solutions, First Data Merchant Services Corporation, TASQ Technology, Inc., TRS Recovery Services Inc., and Telecheck Services Inc. are fully owned by First Data Corporation.

2.      First Data Holdings, Inc. is the parent company of First Data Corporation.

3.      KKR & Co., L.P., a publicly held corporation, indirectly owns more than 10% of First Data Holdings, Inc.'s stock.  No other publicly held corporation owns more than 10% of the stock of First Data Corporation or of First Data Holdings, Inc.

# TABLE OF CONTENTS

PAGE

JURISDICTIONAL STATEMENT ........................................................................1

ISSUES PRESENTED FOR REVIEW ..................................................................2

STATEMENT OF THE CASE.................................................................................3

SUMMARY OF ARGUMENTS.............................................................................6

ARGUMENT ...........................................................................................................7

I.    THE DISTRICT COURT ABUSED ITS DISCRETION IN
      APPROVING THE CLASS SETTLEMENT BECAUSE THE
      SETTLEMENT VIOLATED FDC'S CONSTITUTIONAL DUE
      PROCESS RIGHTS........................................................................................9

      A.    FDC's due process rights are violated because it is forced to
            release Defendants' future liability, including for monetary
            damages, with no right to opt out.......................................................9

      B.    Due Process is also violated because class members are bound
            to a judgment where their claims are not typical or common to
            class representatives. .......................................................................23

II.   APPROVAL OF THE SETTLEMENT WAS IMPROPER BECAUSE
      THE SETTLEMENT CLASS DID NOT MEET THE
      REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE
      23 ...............................................................................................................25

      A.    Class Plaintiffs Did Not Adequately Represent FDC's Interests
            Due to FDC's Unique Role in the Industry as a Competitor of
            Defendants and Safeguard for Consumers.......................................25

            1.    The Class Consists of Merchants and FDC *IS NOT A*
                  *Merchant* ...............................................................................25

2. FDC's Ability to Act as a Safeguard for Consumers in the Payments Industry is Inhibited by the Overbroad Releases in the Settlement Agreement......................................34

B. There is no cohesion among FDC and other class members. ............36

C. A Rule 23(b)(2) injunction is improper here because no single injunction or declaratory judgment provides relief to each class member and any relief to FDC is illusory.........................................38

D. FDC Moved to Opt Out and the Court Should Have Granted the Motion to Preserve FDC's Constitutional Due Process Rights .........42

CONCLUSION ......................................................................................44

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)...............................................................................19, 27, 28

*ARC of Washington State, Inc. v. Quasim,*
    No. C99-5577FDB, 2001 WL 1448523 (W.D. Wash. Oct. 26, 2001)...............28

*Barnes v. American Tobacco Co.,*
    61 F.3d 127 (3d Cir. 1998) ..................................................................................37

*Charron v. Wiener,*
    731 F.3d 241 (2d Cir. 2013) ..................................................................................7

*Clarke v. Advanced Private Networks, Inc.,*
    173 F.R.D. 521 (D. Nev. 1997) ...........................................................................10

*Comcast Corp. v. Behrend,*
    133 S. Ct. 1426 (2013)............................................................................................9

*County of Suffolk v. Long Island Lighting Co.,*
    907 F.2d 1295 (2d Cir. 1990) ..............................................................................42

*Crawford v. Honig,*
    37 F.3d 485 (9th Cir.1995) ..................................................................................42

*Dewey v. Volkswagen Aktiengesellschaft,*
    681 F.3d 170 (3d Cir.2012) ..................................................................................27

*Easterling v. State of Connecticut Dep't of Corrections,*
    No. 3:08-CV-00826 (D. CT) ...............................................................................11

*Fleetwood Enterprises, Inc. v. McManus,*
    320 F.3d 545 (5th Cir. 2003) ...............................................................................37

*Foster v. Bechtel Power Corp.,*
    89 F.R.D. 624 (E.D. Ark. 1981) ..........................................................................20

*Gooch v. Life Investors Ins. Co. of Am.*,
    672 F.R.D. 402 (6th Cir. 2012) ..........................................................................13

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..........................................................................26

*Holmes v. Continental Can Co.*,
    706 F.2d 1144 (11th Cir. 1983) .................................................................12, 42

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012) ...............................................................................7

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg.*,
    920 F. Supp. 2d 1050 (N.D. Cal., Jan 29. 2013) ...............................................11

*In re Dry Max Pampers Litig.*,
    724 F. 3d 713 (6th Cir. 2013) ...........................................................................27

*In re Gen. Motors Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ...........................................................................8, 23

*In re General Motors Corp. Engine Interchange Litig.*,
    594 F.2d 1106 (7th Cir. 1979) ..........................................................................27

*In re Holocaust Victims Assets Litigation*,
    105 F. Supp. 2d 139 (E.D.N.Y. 2000) .................................................................7

*In re Literary Works in Elec. Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011) .............................................................................12

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................12, 13, 42

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493, 516 (S.D.N.Y. 1996) ...............................................................13

*In re Quaker Oats Labeling Litig.*,
    No. 5:10-cv-00502 (N.D. Cal., Feb. 12, 2014)...................................................12

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD1738 (E.D.N.Y., Apr. 3, 2013).........................................................11

*Jermyn v. Best Buy Co., Inc.*,
    No. 1:08-CV-00214 (S.D.N.Y. June 27, 2012) .....................................11, 18, 19

*Jermyn v. Best Buy Co.*,
    No. 08-cv-0214 (S.D.N.Y. May 23, 2012) .......................................................18

*Jermyn v. Best Buy Stores, L.P.*,
    276 F.R.D. 167 (S.D.N.Y. 2011) ....................................................................18

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ........................................................................35

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir. 1998) ........................................................................42

*Local No. 93, Int'l Ass'n of Firefighters, AFL–CIO C.L.C. v. City of
    Cleveland*,
    478 U.S. 501 (1986).........................................................................................26

*Marcera v. Chinlund*,
    559 F.2d 1231 (2d Cir. 1979) .........................................................................38

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*,
    834 F.2d 677 (7th Cir. 1987) ...........................................................................8

*Matsushita Elec. Industrial Co. v. Epstein*,
    516 U.S. 367 (1996)...................................................................................passim

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) ...............................................................10, 19, 21

*NaBanco v. Visa U.S.A., Inc.*,
    779 F.2d 592 (11th Cir. 1986) ........................................................................35

*Noel v. New York City Taxi & Limousine Comm'n*,
    687 F.3d 63 (2d Cir. 2012) ...............................................................................7

*Northwest Wholesale Stationers v. Pacific Stationery & Printing Co.*,
    472 U.S. 284 (1985).........................................................................................39

*O'Brien v. Nat'l. Prop. Analysts Partners*,
739 F. Supp. 896 (S.D.N.Y. 1990) ...............................................................12, 42

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)..........................................................................................passim

*Paycom Billing Services v. MasterCard Int'l, Inc.*,
67 F.3d 283 (2d Cir. 2006) ...............................................................................35

*Penson v. Terminal Transport Co.*,
634 F.2d 989 (5th Cir. 1981) ...........................................................................42

*Reyes v. Metromedia Software, Inc.*,
840 F. Supp. 2d 752 (S.D.N.Y. 2012) .............................................................20

*RJE Corp. v. Northville Indus. Corp.*,
329 F.3d 310 (2d Cir. 2003) .............................................................................20

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*,
959 F.2d 425 (2d Cir. 1992) .............................................................................20

*Target Corp. v. Visa Inc.*,
No. 1:13-cv-03477 (S.D.N.Y. Aug. 13, 2013) ...............................................21

*TBK Partners, Ltd. v. W. Union Corp.*,
675 F.2d 456 (2d Cir. 1982) .............................................................................17

*The Authors Guild v. Google Inc.*,
770 F. Supp. 2d 666 (S.D.N.Y. 2011) .............................................................26

*United States v. Visa U.S.A., Inc.*,
344 F.3d 229 (2d Cir. 2003) .............................................................................35

*Visa U.S.A., Inc. v. First Data Corp.*,
No. 02-1786 (N.D. Cal. filed Apr. 15, 2002) .................................................35

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)................................................passim

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ..................................................................7, 17, 35

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982) ...............................................................8, 42

*Williams v. Burlington Northern, Inc.,*
    832 F.2d 100 (7th Cir. 1987) ....................................................................42

*Haitian Centers Council, Inc. v. McNary,*
    969 F.2d 1326 (2d Cir. 1992), *cert. granted, judgment vacated as moot,*
    509 U.S. 918 (1993) ..................................................................................23

*In re Visa Check/MasterMoney Antitrust Litigation,*
    122 S. Ct. 2382 (2002) ..............................................................................21

*In re Visa Check/MasterMoney Antitrust Litigation,*
    192 F.R.D. 68 (E.D.N.Y. 2000) ...............................................................21

*In re Visa Check/MasterMoney Antitrust Litigation,*
    280 F.3d 124 (2d Cir. 2001) .....................................................................21

*SCFC ILC, Inc. v. Visa U.S.A., Inc.,*
    36 F.3d 958 (10th Cir. 1994), *cert. denied,* 515 U.S. 1152 (1995) ....................35

*Stephenson v. Dow Chemical Co.,*
    273 F.3d 249 (2d Cir. 2001) *aff'd in part by divided court and vacated in
    part,* 539 U.S. 111 (2003) .............................................................19, 20

**RULES**

Fed. R. App. P. 4(a)(1)(A) ................................................................................2

Fed. R. Civ. P. 23 ...............................................................................passim

Fed. R. Civ. P. 23(a) ..........................................................................passim

Fed. R. Civ. P. 23(b) ..........................................................................passim

Fed. R. Civ. P. 23(b)(1) ..............................................................................23

Fed. R. Civ. P. 23(b)(2) ......................................................................passim

Fed. R. Civ. P. 23(b)(3) ..............................................................................25

Fed. R. Civ. P. 23(d) ................................................................42

Fed. R. Civ. P. 23(e) ..................................................................8

Fed. R. Civ. P. 24(a) ..................................................................5

Fed. R. Civ. P. 24(b) ..................................................................5

**STATUTES**

15 U.S.C. § 1 *et seq.* ...............................................................1

15 U.S.C. § 12 *et seq.* .............................................................1

28 U.S.C. § 1291 ........................................................................1

28 U.S.C. § 1331 ........................................................................1

28 U.S.C. § 1337 ........................................................................1

28 U.S.C. § 2201 ........................................................................1

28 U.S.C. § 2202 ........................................................................1

Cal. Bus. & Prof. Code § 16700 *et seq.* ...............................1

Cal. Civ. Code § 1748.1(a) .....................................................40

Colo. Rev. Stat. Ann. § 5-2-212(1) .......................................40

Conn. Gen. Stat. Ann. § 42-133ff(a) ....................................40

Fla. Stat. Ann. § 501.0117(1) ................................................40

Kan. Stat. Ann. § 16a-2-403 .................................................40

Maine Rev. Stat. Ann. tit. 9-A, § 8-303(2) ...........................40

Mass. Gen. Laws Ann. ch. 140D, § 28A(a)(2) .....................40

Miss. Code Ann. § 31-7-9 ......................................................40

N.Y. Gen. Bus. Law § 518 .....................................................40

N.Y. Debt. & Cred. Law. § 270 *et seq.*.......................................................................1

Okla. Stat. Ann. tit. 14A, §§ 2-211, -417 ...........................................................40

Tex. Fin. Code Ann. § 339.001(a) ..........................................................................40

Utah Code § 13-38a-302 ...........................................................................................40

**OTHER AUTHORITIES**

Kevin Wack, *18 States Considering Bans on Credit Card Surcharges, AmericanBanker.com* ...........................................................................................40

Michelle Crouch, *Credit Card Surcharges? No Way, Poll Says, FoxBusiness.com* ....................................................................................................40

Notes of Advisory Committee on Rules, 39 F.R.D. 69, 102 (1966) ....................39

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009) .............................................................................38

Stephen B. Burank, *The Class Action Fairness Act of 2005 in Historical Context: A Preliminary View*, 156 U. Pa. L. Rev. 1439, 1488 (2008) ................9

Victoria Finkle, *Down, But Not Out: Visa Tries to Claw Back PIN Debit Business*, American Banker, Aug. 10, 2012 ........................................................15

William Moore, et al, 5 Moore's Federal Practice 23.41(2)(b) .............................37

# JURISDICTIONAL STATEMENT

This appeal stems from a class action alleging that one or more of the Defendants engaged in conduct in violation of the Sherman Act (15 U.S.C. § 1 *et seq.*), the Clayton Act (15 U.S.C. § 12 *et seq.*), the Cartwright Act (Cal. Bus. & Prof. Code § 16700 *et seq.*), and the New York Uniform Fraudulent Conveyance Act (N.Y. Debt. & Cred. Law § 270 *et seq.*).  Plaintiffs allege that, by adopting interchange rules and rates, other network rules, and corporate reorganizations, which constituted unlawful price fixing, unreasonable restraints of trade, monopolization, lessening of competition, and fraudulent conveyances, Defendants injured the Class Plaintiffs and other merchants in the asserted Rule 23(b)(3) and Rule 23(b)(2) classes in accepting Visa-Branded Cards and/or MasterCard-Branded Cards as payment for goods or services.

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 2201, and 2202.  Jurisdiction in this Court is based upon 28 U.S.C. § 1291, in that this is an appeal from a final judgment of the district court disposing of all claims by all parties.  The District Court issued a Memorandum and Order granting final approval of the class settlement on December 13, 2013.  SPA1; JA__{DE 6124}. First Data Corporation, First Data Merchant Services Corporation, First Data Government Solutions, TASQ Technology, Inc., TRS Recovery Services, Inc.,

Telecheck Services, Inc. and their affiliates (collectively, "FDC") timely filed a

joint notice of appeal on January 10, 2014.  JA__{DE6179}.  The Class Settlement

Order and Final Judgment was entered January 14, 2014.  SPA73-97;

JA__{DE6199}.  This appeal is timely pursuant to Federal Rule of Appellate

Procedure 4(a)(1)(A).

### ISSUES PRESENTED FOR REVIEW

1.     Whether absent class member FDC's constitutional due process rights

were violated by its inclusion in a no-opt-out settlement class in which it is forced

to release present and future claims for monetary damages based upon ongoing and

future conduct.

2.     Whether absent class member FDC's constitutional due process rights

were violated by its inclusion in a no-opt-out settlement class in which its claims

are not typical or common to those of class representatives, where any relief to it is

illusory, and where FDC is fact a competitor of defendants in the financial services

industry.

3.     Whether the approved settlement meets the requirements of Federal

Rule of Civil Procedure 23 when the settlement class lacks cohesiveness, the

consideration given to class members is illusory, class members are inadequately

represented, and the settlement contains overbroad releases, including for non-incidental claims for money damages with no right to opt out.

## STATEMENT OF THE CASE

The allegations in this decade old litigation are that Defendants Visa, U.S.A. Inc., MasterCard International Inc., and their respective issuing banks violated antitrust laws by imposing rules and restraints that caused merchants to pay unfair and uncompetitive interchange fees for credit and debit card transactions.  Class Plaintiffs in the action are merchants (not competitors) purporting to represent approximately 12 million class members (purportedly also merchants, not competitors) against the Defendants, who Plaintiffs say unlawfully adopted interchange rules and rates, other network rules, and corporate reorganizations that injured the Class Plaintiffs and other merchants.

In October 2012, before Class Plaintiffs' Motion for Class Certification was decided, Class Plaintiffs and Defendants entered into the Settlement Agreement that underlies this appeal.  *See* Special Appendix ("SPA") 98-202.

The Settlement Agreement provided for two settlement classes:  (1) a Federal Rules of Civil Procedure ("FRCP") 23(b)(3) class *with* opt-out rights (made up of all entities that accepted Visa- and MasterCard-branded cards between January 1, 2004 and November 28, 2012) to which the defendants agreed to pay up

to approximately $7.25 billion on a pro-rata basis; and (2) an FRCP 23(b)(2) class *without* opt-out rights (made up of all entities that had accepted Visa- and MasterCard-branded cards as of November 28, 2012, or who would in the future accept such cards) for whom the defendants would modify several of their challenged rules, in return for which the Rule 23(b)(2) settlement class was subject to a comprehensive forward-looking release, covenant not to sue, and permanent injunction, all barring members of the Rule 23(b)(2) settlement class from ever again challenging the Defendants' rules and conduct in future litigation.

On October 19, 2012, Class Plaintiffs filed a Motion for Class Settlement Preliminary Approval.  On November 4, 2012, FDC, along with hundreds of other putative class members, filed objections to the preliminary approval of the Settlement Agreement based, among other things, on the ground that the mandatory Rule 23(b)(2) class violated class members' constitutional due process rights, did not meet the requirements of Rule 23, and was not fair, reasonable, or adequate.  Following a hearing on November 9, 2012, and despite the large number of objections, the Honorable Judge John Gleeson of the U.S. District Court, Eastern District of New York, preliminarily approved the Definitive Class Settlement on November 27, 2012.

Class Plaintiffs filed their Motion for Class Plaintiffs Final Approval of Settlement on April 11, 2013.  On May 24, 2013, FDC filed the following: (1) objections to the proposed final approval of the Settlement Agreement; (2) a Motion to Intervene Pursuant to Fed. R. Civ. P. 24(a) and 24(b); and (3) a Motion to Opt Out of Rule 23(b)(2) Class Settlement.  FDC's Motion to Intervene was unopposed and granted.  FDC based its objections and its Motion to Opt Out of Rule 23(b)(2) Class Settlement on the constitutional due process violations inherent in the Settlement Agreement and the Rule 23(b)(2) class, the failure to meet the requirements of Rule 23, inadequate representation of FDC by the class, and FDC's unique role as a competitor of Defendants in the financial services industry.  The district court held a final fairness hearing on September 12, 2013.

Over FDC's and many other objections, the district court issued a Memorandum and Order granting final approval of the class settlement on December 13, 2013.  SPA1-55 (Available at 2013 WL 6510737 (E.D.N.Y. Dec. 13, 2013).  The District Court never explicitly ruled on FDC's Motion to Opt Out of Rule 23(b)(2) Class.  The Class Settlement Order and Final Judgment was entered on January 14, 2014.  SPA73-97.  The District Court held that the Class Settlement Agreement was "fair, reasonable, and adequate" [SPA74], "consistent with the requirements of federal law and all applicable court rules, including

Federal Rule of Civil Procedure 23" [*Id.*] and "entered into in good faith, following arm's-length negotiations." [*Id.*]  On these bases, the Court certified, for settlement purposes only, both the Rule 23(b)(3) and 23(b)(2) Settlement Classes, and specified that exclusions would not be permitted from the Rule 23(b)(2) Settlement Class.  SPA75.  FDC's Motion to Opt Out was therefore implicitly denied.

### SUMMARY OF ARGUMENTS

The District Court committed legal error in granting final approval of the proposed settlement for several reasons.  Including FDC, a competitor, in the mandatory Rule 23(b)(2) Class violates FDC's constitutional due process rights by forcing FDC to agree to broad releases of Defendants' future conduct, including waiving its right to sue for monetary damages in the future.  The settlement then adds insult to injury because, in return, FDC gets nothing but illusory relief.

Even if the relief were acceptable, FDC's mere inclusion in the Rule 23(b)(2) class member definition is out of place when FDC is nothing like the merchants who are plaintiffs and the true class members in this case.  Indeed, FDC has interests vastly different from Class Plaintiffs, including its interests as a *direct competitor* of Defendants in the financial services industry, the same Defendants against whom FDC is forced to waive practically all future claims related to

antitrust violations.  Class Plaintiffs did not adequately represent FDC and the settlement is not fair, adequate or reasonable.

The district court abused its discretion by granting approval of a class settlement that violated the constitutional due process rights of FDC and other objectors and did not meet the requirements of Rule 23.  At minimum, the district court should have used its discretion to grant FDC's Motion to Opt Out of the Rule 23(b)(2) Class Settlement before approving the settlement class and its failure to do so was plain error.

## ARGUMENT

The standard of review of the District Court's approval of the class settlement and grant of permanent injunction is for abuse of discretion.  *See Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 237 (2d Cir. 2012); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 n.12 (2d Cir. 2005).  Questions of law are reviewed *de novo*.  *Wal-Mart Stores*, 396 F.3d at 106 n.12.

To evaluate whether a class settlement is fair, a district court examines (1) the negotiations that led up to the settlement, and (2) the substantive terms of the settlement.  *See In re Holocaust Victims Assets Litigation*, 105 F. Supp. 2d 139, 145 (E.D.N.Y. 2000).  Where settlement and certification proceed simultaneously,

courts must give heightened attention to the requirements of Rule 23(a). *Charron v. Wiener*, 731 F.3d 241, 250 (2d Cir. 2013). The "certification of a mandatory settlement class 'effectively concludes the proceeding save for the final fairness hearing,' and there is thus a heightened risk of conflating the fairness requirements of Rule 23(e) with the independent requirement of 'rigorous adherence to those provisions of the Rule designed to protect absentees,' such as Rules 23(a) and (b)." *Id.* Courts should be "even more scrupulous than usual" in considering whether to approve settlements where no class has formally been certified. *In re Gen. Motors Prods. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995); *see also Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681 (7th Cir. 1987) ("[W]hen class certification is deferred, a more careful scrutiny of the fairness of the settlement is required."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("[D]istrict judges who decide to employ such a procedure are bound to scrutinize the fairness of the settlement agreement with even more than the usual care.").

## I.    THE DISTRICT COURT ABUSED ITS DISCRETION IN APPROVING THE CLASS SETTLEMENT BECAUSE THE SETTLEMENT VIOLATED FDC'S CONSTITUTIONAL DUE PROCESS RIGHTS

### A.    FDC's due process rights are violated because it is forced to release Defendants' future liability, including for monetary damages, with no right to opt out.

Inclusion in the mandatory Rule 23(b)(2) settlement class violates FDC's due process rights because the proposed settlement forces FDC to release Defendants' future antitrust and other liability, including monetary damages, with no right to opt out.  This outcome is untenable.  In *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), the Supreme Court rejected a settlement agreement and highlighted the "serious constitutional concerns raised by the mandatory class resolution of individual legal claims, especially where a case seeks to resolve future liability in a settlement only action."  527 U.S. at 842.

The district court's Memorandum and Order gives short shrift to FDC's— and many other objectors'—serious concerns about the due process violations inherent in the Settlement Agreement's broad release language.  The Supreme Court has repeatedly emphasized that FRCP 23 requires district courts to perform "rigorous analysis" to resolve any issues "b[earing] on the propriety of class certification." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (citation omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 & n.6,

180 L. Ed. 2d 374 (2011).  Mandatory class action lawsuits in which class members have no right to opt out threaten to violate class members' right to abstain from a court's decision "regardless either of their consent, or, in a class with objectors, their express wish to the contrary."  *Ortiz*, 527 U.S. at 846-47.

Notice and opt-out rights were added to the Federal Rules in 1966 precisely to address the fact that class certification raises concerns about the due process rights of individual members of a class.  Fed. R. Civ. P. 23 Advisory Committee Note (1966); *see also* Stephen B. Burank, *The Class Action Fairness Act of 2005 in Historical Context: A Preliminary View*, 156 U. Pa. L. Rev. 1439, 1488 (2008) ("The Advisory Committee settled on notice and opt-out rights to meet the expressed concern that (b)(3) classes might be used by class counsel, in league with the defendants, to force those with substantial individual claims into group litigation inimical to their interests.").

Even before *Dukes*, the Supreme Court in *Ortiz* recognized the problems with mandatory class resolution of individual claims in settlement only classes. *See Ortiz*, 527 U.S. at 842; *see also Molski v. Gleich*, 318 F.3d 937, 948-49 (9th Cir. 2003) (noting that the Supreme Court in *Ortiz* found that monetary damage claims implicate the fundamental due process right not to be "bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he

has not been made a party by service of process.") (quoting *Ortiz*, 527 U.S. at 846.)

Federal courts have interpreted due process to require that "[i]n a class action in

which unnamed plaintiff class members are not permitted the opportunity to opt

out, an unnamed plaintiff class member is not bound by that portion of a settlement

which purports to preclude further claims for damages based on the same facts

encompassed by the litigation." *Clarke v. Advanced Private Networks, Inc.*, 173

F.R.D. 521, 522 (D. Nev. 1997).

In *Dukes*, the Supreme Court noted that there was a "serious possibility" that

the "absence of notice and opt-out" in a mandatory Rule 23(b)(2) class would

violate due process. 131 S. Ct. at 2559. In order to avoid reaching a holding on

the question, the Court emphasized that it had all the more reason not to read Rule

23(b)(2) classes to include monetary claims. *Id.*

Without an explicit holding but with the Supreme Court's guidance, federal

courts post-*Dukes* have either granted opt-out rights to members of mandatory

Rule 23(b)(2) classes or have held that Rule 23(b)(2) settlements do not release

class members' claims for future monetary damages. *See Easterling v. State of*

*Connecticut Dep't of Corrections*, No. 3:08-CV-00826 (D. Ct. July 24, 2013)

(Granting preliminary approval to a proposed class settlement giving class

members the right to opt out of the *entire* class, including the 23(b)(3) *and* 23(b)(2)

classes) (Dkt. 244-4); *Jermyn v. Best Buy Co., Inc.*, No. 1:08-CV-00214 (S.D.N.Y. June 27, 2012) ("The [Rule 23(b)(2)] settlement agreement provides for a release of claims for injunctive relief, but does *not* release class members' monetary claims….") (Dkt. 275); *In re Vitamin C Antitrust Litig.*, No. 06-MD1738 (E.D.N.Y., Apr. 3, 2013) (Dkt. No. 678, 679) (Although the settlement release language includes both monetary and injunctive relief, the express terms of the release of Rule 23(b)(2) Settlement Class is for "their claims related to injunctive relief against Settling Defendants."); *In re Conseco Life Ins. Co. Life Trend Ins. Mktg.*, 920 F. Supp. 2d 1050, 1056 (N.D. Cal., Jan 29. 2013) ("Despite the fact that the class was certified under 23(b)(2), because of the ambiguous nature of the effect of the regulatory settlement on the class litigation, the Court required (and the plaintiffs have provided) notice and opt-out rights."); *In re Quaker Oats Labeling Litig.*, No. 5:10-cv-00502 (N.D. Cal., Feb. 12, 2014) (Dkt. 180) (Preliminarily approving 23(b)(2) settlement class which allows class members to opt out). In a recent case in this Circuit, this Court noted that the settlement agreement approved in the case *explicitly* gave class members the right to opt out of the release for future claims. *See In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 246 (2d Cir. 2011) ("A class member may choose to opt out of the release for future use and only grant a release for past use….")

Other Circuits have recognized that opt-out rights are one way to avoid due process violations if a settlement is to be approved.  *See, e.g., Holmes v. Continental Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983) ("[D]etermination that the situation of [a party seeking opt-out rights] was distinguishable from that of the general class provides a sound reason for authorizing" court's granting of opt-out rights when they are not usually authorized by Rule 23); *O'Brien v. Nat'l. Prop. Analysts Partners*, 739 F. Supp. 896, 901 (S.D.N.Y. 1990); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 482 (S.D.N.Y. 1998)[1] ("The fact that the scope of the release has been fully disclosed in the Class Notice with opportunity for opting out strongly supports the scope of the releases."); *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.R.D. 402, 428-29 & n.16 (6th Cir. 2012) (Approving certification of Rule 23(b)(2) class settlement that did not preclude monetary damages because preclusion of monetary damages claims is not proper after *Dukes.*)

Ignoring this post-*Dukes* trend in authority, the district court here dismissed objectors' due process objections with the conclusory statement that the settlement releases would "cover only the claims that may properly be extinguished by the

---

[1] Before settlement, the court in *Nasdaq* certified both 23(b)(2) and (b)(3) classes, 169 F.R.D. 493, 516 (S.D.N.Y. 1996), but when the case settled, class members were allowed to opt out of the *entire* settlement.  187 F.R.D. at 482.

settlement of a class action…." SPA44.  This conclusion is contradicted by the

actual language of the Settlement Agreement:

> [T]he Rule 23(b)(2) Settlement Class Releasing Parties hereby expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Rule 23(b)(2) Settlement Class Released Parties from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, *parens patriae*, or otherwise in nature, for any form of declaratory, injunctive, or equitable relief, ***or any damages or other monetary relief relating to the period after the date of the Court's entry of the Class Settlement Preliminary Approval Order***, regardless of when such claims accrue, whether known or unknown, suspected or unsuspected, in law or in equity that any Rule 23(b)(2) Settlement Class Releasing Party now has, or hereafter can, shall, or may in the future have, arising out of or relating in any way to any conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act of any Rule 23(b)(2) Settlement Class Released Party that are alleged or which could have been alleged from the beginning of time until the date of the Court's entry of the Class Settlement Preliminary Approval Order in any of the Operative Class Complaints or Class Action complaints, or in any amendments to the Operative Class Complaints or Class Action complaints, including but not limited to any claims based on or relating to:
>
> …
>
> (g) the future effect in the United States of the continued imposition of or adherence to any Rule of any Visa Defendant or MasterCard Defendant in effect in the United States as of the date of the Court's entry of the Class Settlement Preliminary Approval Order, any Rule modified or to be modified pursuant to this Class Settlement Agreement, ***or any Rule that is substantially similar to any Rule in effect in the United States as of the date of the Court's entry of the Class Settlement Preliminary Approval Order*** or any Rule modified or to be modified pursuant to this Class Settlement Agreement;
>
> **(h) the future effect in the United States of any conduct of any Rule 23(b)(2) Settlement Class Released Party substantially**

-14-

**similar to the conduct of any Rule 23(b)(2) Settlement Class Released Party related to or arising out of interchange rules, interchange fees, or interchange rates**, any Rule of any Visa Defendant or MasterCard Defendant modified or to be modified Pursuant to this Class Settlement Agreement, any other Rule of any Visa Defendant or any MasterCard Defendant in effect as of the date of the Court's entry of the Class Settlement Preliminary Approval Order, **or any Rule substantially similar to any of the foregoing Rules** ….

SPA169-171 (emphasis added).

Put simply, the plain language of the SPA states that members of the mandatory Rule 23(b)(2) class are barred from bringing any type of action, including for monetary damages, against Defendants related to their *future* rule changes and conduct that are "substantially similar."  Which begs the question what is "substantially similar"?  That ambiguity in the agreement gives Defendants with just enough wiggle room to bar most, if not all, antitrust suits against them related to their *future* rules and *future* conduct.  Put another way, this settlement grants the extraordinary benefit of antitrust immunity from its competitors who were roped unwillingly into the (b)(2) class.

And the Court does not need to speculate how Defendants will interpret this broad release.  It need only look at Defendants' actual conduct.  For example, Visa's Fixed Acquirer Network Fee ("FANF") was not imposed on merchants by

Visa until April 2012.[2]  The Settlement Agreement nevertheless includes FANF in its definition of "Merchant Fee" [SPA111] and specifies that claims solely for "injunctive relief" regarding the legality of FANF are not released [SPA174] despite the fact that FANF did not exist until *seven* years after this litigation began and *three and a half* years after the close of discovery.  JA[_]{Docket Entry ("DE") 5957 (FDC's Reply In Support of Motion to Opt Out at p.8)}.  As absurd as it is to suggest that class plaintiffs could have sued for FANF seven years before its existence, the Settlement Agreement still purports to release Visa from damages claims related to FANF for all time.

Another illustrative example is the Settlement Agreement's definition of "Credit Card":  "any card, plate, or other payment code, device, or service, even where no physical card is issued and the code or device is used for only one

---

[2] *See, e.g.*, Visa Inc., Annual Report (Form 10-K), at 40, 110 (Nov. 15, 2012); Visa Business News, *Visa Announces Acquirer Pricing Restructuring: Introduction of a Fixed Network Participation Fee With Reductions to Variable Fees and Changes to the U.S. Acquirer Quarterly Operating Certificate Reporting* (July 28, 2011); Visa Business News, *Visa Announces Modified U.S. Interlink Acquirer Switch Fee Pricing* (Oct. 27, 2011); Visa Business News, *Visa Announces Details of U.S. Acquirer Pricing Restructuring, Including Rates for New Fixed Acquirer Network Fee and Reductions to Variable Fees on All Products* (Feb. 9, 2012);  Victoria Finkle, *Down, But Not Out: Visa Tries to Claw Back PIN Debit Business*, American Banker, Aug. 10, 2012, http://www.americanbanker.com/issues/ 177_155/visa-tries-to-claw-back-pin-debit-business-1051755-1.html; Aman Shah and Sharanya Hrishikesh, *FTC asks Visa for information on debit card service*, Reuters, Nov. 16, 2012, http://www.reuters.com/article/2012 /11/16/ us-visa-ftcidUSBRE8AF1CD20121116.

transaction — including, without limitation, a plastic card, a mobile telephone, a fob, or any other current or future code, device, or service by which a person, business, or other entity can pay for goods or services ...."  SPA109.  When class plaintiffs commenced this litigation in 2005, they could not have been suing for fees charged on any mobile telephone payment device or any future device.  As pointed out by Professor Jerry Hausman, this definition of "credit card" very well could prohibit merchants from using mobile payment or other strategies because it could violate Defendants "Honor All Cards" rules and merchants would be barred from bringing any action against Defendants because of the broad language of the releases in Settlement Agreement.[3]

These examples merely highlight how broadly Defendants read the releases and further emphasize how the claims released are clearly not part of the "identical factual predicate" of the complaint.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*, 396 F.3d 96, 107 (quoting *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982)).

The district court failed to include an explanation for its decision to ignore that after *Dukes*, it is not appropriate for a court to approve a mandatory Rule 23(b)(2) settlement class that attempts to release future *damages* claims.  Indeed,

---

[3] *See* JA[_] {DE 2670-5 (Report of Professor Jerry Hausman, ¶ 109)}.

the district court's order acknowledges that the "full array of future claims embraced by such a release necessarily involves a measure of uncertainty," but holds that this Circuit's "identical factual predicate" requirement would serve to limit such releases. SPA44-45. How it would do so when contradicted by the plain language of the Settlement Agreement, however, was not addressed by the district court. To make clear, the Settlement Agreement's 23(b)(2) class releases Defendants from members' claims for Defendants' future unlawful conduct that results in *individualized money damages*, without giving class members the right to opt out now. This is an act without precedent or support.

Within this Circuit, recent cases affirm FDC's stance. In *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167 (S.D.N.Y. 2011), the court approved certification of a Rule 23(b)(2) class for injunctive relief and a Rule 23(b)(3) class for damages. The court reasoned that "*Dukes* . . . was concerned with Rule 23(b)(2) classes that sought both injunctive and monetary relief. In this case, by contrast, I have certified a class both under Rule 23(b)(2) and under Rule 23(b)(3) . . . . [U]nlike *Dukes*, a (b)(2) class is not seeking monetary relief, but only an injunction against further statutory violations. It is a separately certified (b)(3) class that seeks money damages."

However, the Rule 23(b)(2) Settlement Class in *Jermyn* explicitly did "***not release any claims for monetary relief against Best Buy***," but instead only released "all claims for classwide injunctive and declaratory relief." (Settlement Agreement ¶¶ 17-18, Ex. A to Declaration of David S. Stellings in Support of Motion for Approval of Class Action Settlement and Award of Attorneys' Fees, *Jermyn v. Best Buy Co.,* No. 08-cv-0214 (S.D.N.Y. May 23, 2012), ECF No. 271-1.)

Similarly, in *Vitamin C Antitrust Litigation*, the court granted preliminary approval to a class settlement, after certifying a (b)(2) and (b)(3) settlement class, but the release for the (b)(2) settlement class (called "Injunction Releasors") released only "their claims related to injunctive relief against Settling Defendants." *Vitamin C Antitrust Litigation*, No. 06-MD1738, (E.D.N.Y., April 3, 2013) ECF No. 678, 679-3¶23.

Unlike the settlement agreements in *Jermyn* and *Vitamin C Antitrust Litigation*, this Settlement Agreement violates FDC's Due Process rights because it forces members of the mandatory class to relinquish future claims to monetary relief and defenses to claims that have yet to accrue.[4]   *See Amchem Prods., Inc. v.*

---

[4] Because due process forbids resolving unaccrued future claims by settlement with no opt-out rights, FDC does not waive its right to bring future lawsuits against defendants even if approval of the settlement agreement is affirmed.

*Windsor*, 521 U.S. 591, 628 (1997); *Stephenson v. Dow Chemical Co.*, 273 F.3d 249, 259-61 (2d Cir. 2001) *aff'd in part by divided court and vacated in part*, 539 U.S. 111 (2003) (settlement violated class members' rights to due process by purporting to relinquish their unaccrued future claims); *Molski v. Gleich*, 318 F.3d 937, 952 (9th Cir. 2003) ("Because the consent decree released almost all of the absent class members' claims with little or no compensation, the settlement agreement was unfair and did not adequately protect the interests of the absent class members." ); *Foster v. Bechtel Power Corp.*, 89 F.R.D. 624, 626-27 (E.D. Ark. 1981) (future claims cannot satisfy Rule 23(a)'s typicality, commonality, or adequacy of representation requirements). *Res judicata* normally applies to judgments in class actions, but it does not bind class members "where to do so would violate due process." *Stephenson*, 273 F.3d at 260.

When a provision of an agreement is unambiguous, the court looks only to the text of the contract to determine the parties' intent, and extrinsic evidence should not be used. *See, e.g., RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (Where an agreement "is clear and unambiguous on its face, the intent of the parties must be gleaned from the four corners of the instrument, and not from extrinsic evidence."); *Reyes v. Metromedia Software, Inc.*, 840 F. Supp. 2d 752, 755 (S.D.N.Y. 2012) (court interpreting a contract must "give effect to the

intent of the parties as revealed by the language they chose to use.") (quoting *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)).

This Court cannot rely on parol – and thus empty – assurances by Class Counsel, Visa or MasterCard that *only* claims related to the current litigation would be barred because the settlement agreement's plain language is unambiguously to the contrary.

In *Molski v. Gleich*, the Ninth Circuit addressed this very issue in the context of a proposed mandatory 23(b)(2) class settlement. Despite plain language in the settlement releasing all statutory damages, treble damages, and actual damages not involving physical injury, the plaintiffs tried to assert that actual damages were preserved by the settlement since plaintiffs made statements on the record and publicly stated that future claims for actual damages would not be precluded. 318 F.3d at 946. The court pointedly rejected this argument because—like the Settlement Agreement in this case—the settlement in *Molski* contained a merger clause "which prevents consideration of outside statements. …Thus the parties will be bound by the language of the decree in future litigation." *Id.*

In *Target Corp. v. Visa Inc.*, No. 1:13-cv-03477 (S.D.N.Y. Aug. 13, 2013) (Dkt. 85-86), Visa and MasterCard moved to dismiss the antitrust lawsuit filed against them by 17 major retailers on the grounds that *the claims were barred*

*because of release agreements* from the 2003 settlement of *In re Visa Check/MasterMoney Antitrust Litigation*, 192 F.R.D. 68, 72-73 (E.D.N.Y. 2000), aff'd , 280 F.3d 124 (2d Cir. 2001), cert. denied, 122 S. Ct. 2382 (2002). Defendants pointed out that plaintiffs had released "all past, present, or future claims relating in any way to their respective network rules prior to January 1, 2004 that were or could have been alleged." *Id.* (Dkt. 86 at 4.)  FDC notes that the 17 retailers who filed suit against Defendants are all merchants who opted out of the settlement in this litigation and filed objections to the class settlement.

The release language in this case is similarly broad and should guide the Court's thinking:  there is no reason to believe Defendants will act differently with regard to their interpretation of the claims released in this litigation.  The plain language of the Settlement Agreement releases would give Defendants *carte blanche* to seek to bar any and all claims by FDC in the future.

Therefore, nothing Class Counsel, Visa, or MasterCard says in this case affects the very clear plain language of the settlement agreement:  "This Class Settlement Agreement constitutes the entire, complete, and integrated agreement between and among the Class Plaintiffs, on behalf of themselves and the Rule 23(b)(3) Settlement Class and the Rule 23(b)(2) Settlement Class, and the Defendants with respect to the settlement of the Class Actions."  SPA196.  This

language leaves wide open the possibility that defendants would rely on this

settlement agreement in the future to try to preclude litigation—even for monetary

damages—that has  nothing to do with the factual predicate of this case.

## B. Due Process is also violated because class members are bound to a judgment where their claims are not typical or common to class representatives.

Due process and the federal rules prohibit binding absent class members to a

judgment where their claims are not "typical" or "common" to those of the class

representative.  Fed. R. Civ. P. 23(a).  Courts are required to ensure that claims

prosecuted by named plaintiffs do not differ from the claims of absent class

members.  *In re Gen. Motors Pick- Up Truck Fuel Tank Prods. Liab. Litig.*, 55

F.3d 768, 796 (3d Cir. 1995); *see also Haitian Centers Council, Inc. v. McNary*,

969 F.2d 1326 (2d Cir. 1992), *cert. granted, judgment vacated as moot*, 509 U.S.

918, (1993) (Overbroad framing of 23(b)(2) class was so unfair to dissimilar,

absent members not provided opt-out rights as to approach deprivation of due

process).  The "mandatory" nature of the settlement was one of the rationales

underlying the Supreme Court's rejection of a global asbestos settlement in the

*Ortiz* litigation.  *See Ortiz*, 527 U.S. at 842-43 (adopting a limiting construction of

the Rule 23(b)(1)(B) mandatory class in order to avoid "serious constitutional

concerns raised by the mandatory class resolution of individual legal claims").

As explained more fully below, FDC and its affiliates are involved in many different facets of the payments industry and are wholly unlike the merchant settlement class representatives.  In addition to accepting Visa- and MasterCard-branded credit cards, like the named and represented class plaintiffs, FDC and its affiliates provide internet and mobile payment solutions, acquiring and processing services, credit, debit, private-label, gift, payroll and other prepaid card solutions, and fraud protection and authentication.  Through its STAR network, FDC also provides PIN-secured debit acceptance at retail and ATM locations.  [cite?]

As a result, waiver of all future antitrust and other claims against Visa and MasterCard—which is what the releases amount to—means something very different for FDC than it does for the merchant class members.  Settlement of litigation on interchange fees should not affect the legal relationship between entities like FDC and the defendants with respect to the numerous other issues in the payments industry that were simply not covered by the claims in this case. More fundamentally, as explained fully below, the proposed settlement agreement gives FDC *no consideration* separate from what it provides to merchants, whose interests would, at least in theory, have been advocated by class counsel who represent them.  Class action settlement should not be a vehicle for promoting such an unconstitutional outcome.

## II. APPROVAL OF THE SETTLEMENT WAS IMPROPER BECAUSE THE SETTLEMENT CLASS DID NOT MEET THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23

### A. Class Plaintiffs Did Not Adequately Represent FDC's Interests Due to FDC's Unique Role in the Industry as a Competitor of Defendants and Safeguard for Consumers.

#### 1. The Class Consists of Merchants and FDC *IS NOT A* Merchant

The plaintiffs who filed the actions consolidated in this MDL are merchants or groups of merchants concerned with interchange fees. Unlike those plaintiffs, FDC and its affiliates are not merchants: they are not in the business of accepting credit cards, and, to the extent they do accept them, it is incidental – indeed insignificant – to FDC's core business.[5] The overbroad class definition contained in the Settlement Agreement, however, included any person or entity that accepts or will ever accept a Visa- or MasterCard-branded card,[6] roping FDC and its

---

[5] FDC and its affiliates generate less than half a percent of their revenues on credit card transactions. JA[_] {DE 4654 at p.1}. Some of their acceptance of credit cards relates to employees buying lunch in the company cafeteria, paying for shipping services in the company mailroom, or making charitable donations to the company's charitable foundation. *Id.*

[6] The Settlement Agreement defines the Rule 23(b)(2) and 23(b)(3) Settlement Classes identically, as "all persons, businesses, and other entities that as of the Settlement Preliminary Approval Date or in the future accept any Visa-Branded Cards and/or MasterCard-Branded Cards in the United States, except that this Class shall not include the named Defendants, their directors, officers, or members of their families, financial institutions that have issued Visa or MasterCard-Branded Cards or acquired Visa- or MasterCard-Branded Card

affiliates into membership of a 23(b)(2) class whose class representatives did not and could not adequately represent the interests of FDC in the litigation.

Even more troubling is the fact that some entities, including certain FDC affiliates, which are direct competitors of Visa and MasterCard in the payments industry, are included among parties *releasing Visa and MasterCard from all future claims* without being similar to the suing class representatives in any way. A settlement class should have a common nucleus of facts and law that are common to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). "[R]eleased claims [should] come within 'the general scope of the case made by the pleadings.'" *The Authors Guild v. Google Inc.*, 770 F. Supp. 2d 666, 679 (S.D.N.Y. 2011) (denying approval of settlement agreement) (citing *Local No. 93, Int'l Ass'n of Firefighters, AFL–CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986)).

Class counsel never identified the common elements of fact and law that apply to FDC along with all other class members or adequately consider or advocate for the positions of FDC. Moreover, while some of FDC's affiliates that accept Visa and MasterCard payment cards as an incidental part of their business and thus are class members by virtue of the overbroad class definition, other

---

transactions at any time since January 1, 2004, or do so in the future, or the United States government." SPA118.

affiliates and First Data itself are bound by the overbroad language of the release despite not being included in the definition of the class.

Rule 23(a)(4) provides that a class action may be maintained only if "the representative parties will fully and adequately protect the interests of the class." *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); Fed. R. Civ. P. 23(a)(4). Under that Rule, courts measure the adequacy of the class members' representation based upon two factors: "1) the representatives must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Dry Max Pampers Litig.*, 724 F. 3d 713, 721 (6th Cir. 2013) (citations omitted). The Rule requires that "the class members have interests that are not antagonistic to one another." *Id.* (citations omitted). Thus, "the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir.2012).

These requirements are scrutinized more closely in cases involving a settlement class. *See In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1125 n.24 (7th Cir. 1979), *cert. denied*, 444 U.S. 870 (1979) ("No one can tell whether a compromise found to be 'fair' might not have been 'fairer' had

the negotiating [attorney] ... been animated by undivided loyalty to the cause of the class.") (citation omitted).  Thus, the Supreme Court itself has emphasized that the courts must give "undiluted, even heightened, attention in the settlement context[]" to the certification requirements of Rule 23.  Amchem, 521 U.S. at 620.  The importance of adequate representation "is only heightened when … the members of the proposed class have no right to opt-out."  *ARC of Washington State, Inc. v. Quasim*, No. C99-5577FDB, 2001 WL 1448523 at *4 (W.D. Wash. Oct. 26, 2001).

The fact remains that the settlement here does not take, and could not have taken, the best interests of parties like FDC into account because the interests of FDC are very different from those of the merchants, retailers and other point-of-sale class members whose concerns are the focus of the settlement agreement.  *See Amchem*, 521 U.S. at 627 (class settlements must provide "structural assurance of fair and adequate representation for the diverse groups and individuals affected"); *Matsushita Elec. Industrial Co. v. Epstein*, 516 U.S. 367, 388 (1996) (Ginsburg, J., concurring) ("In the class-action setting, adequate representation is among the due process ingredients that must be supplied if the judgment is to bind absent class members.").

An acquiring, networking or processing entity like FDC faces different issues, antitrust and otherwise, in relation to Visa and MasterCard than an entity

that only accepts credit cards as payment in its retail locations. FDC is a global payment processing company that has operations in 34 countries, providing approximately 6.2 million merchant locations with transaction processing services, fraud protection and authentication solutions, electronic check and mobile payment solutions, and PIN-secured debit acceptance through FDC's STAR Network. JA[_] {DE 4654 (Objects of FDC to Final Approval of Definitive Class Settlement Agreement at p. 2)}. FDC provides these various services to merchants either directly or through its affiliates, which include First Data Merchant Services (comprehensive payment processing and payment solutions), TASQ Technology, Inc. (provider of point-of-sale equipment and services), TRS Recovery Services Inc. (check loss recovery services), First Data Government Solutions (payment processing for governmental agencies accepting credit cards), and TeleCheck (traditional and electronic check acceptance, check processing, and risk analytics services). *Id.* Some of FDC's affiliates, including those named above, accept credit cards for payment in their operations, which brings them within the definition of the putative class in this case. *Id.*

Merchant acquirers like FDC facilitate merchants' acceptance of consumer transactions at the point of sale ("POS"), whether it is a transaction at a physical merchant location or over the internet, by enabling merchants to accept credit,

debit, stored-value and loyalty cards and by authorizing, capturing and settling the merchants' transactions.  JA[_] {DE 4654 at p.3}.  Merchant acquirers also provide POS devices and other equipment necessary to capture merchant transactions.  *Id.* FDC's alliance/referral partner structure allows it to be the processor for multiple financial institutions, any one of which may be selected by a merchant as their bank partner.  *Id.*  Unlike the merchant Plaintiffs, FDC and its affiliates compete directly against Visa and MasterCard in the payments industry.

There are a number of different entities involved in any merchant payment transaction including the cardholder, card issuer, card association, merchant, merchant acquirer, electronic processor for credit and signature debit transactions, and debit network for PIN debit transactions.  *Id.*  The card issuer is the financial institution that issues credit or debit cards, authorizes transactions, and provides funds for the transaction.  *Id.*  Some of these functions may be performed by an electronic processor (such as FDC's financial services business) on behalf of the issuer.  *Id.*  The card associations, Visa or MasterCard, a debit network (such as FDC's STAR Network) or another payment network (such as Discover's PULSE Network) route transactions between FDC and the card issuer.  *Id.*  The merchant is a business from which a product or service is purchased by a cardholder.  *Id.*

The acquirer (such as FDC or one of its alliances) contracts with merchants to facilitate their acceptance of cards. *Id.* A merchant acquirer may do its own processing or, more commonly, may outsource those functions to an electronic processor such as FDC. *Id.* The acquirer/processor serves as an intermediary between the merchant and the card issuer by: (1) obtaining authorization from the card issuer through a card association or debit network; (2) transmitting the transaction to the card issuer through the applicable card association, payment network, or debit network; and (3) paying the merchant for the transaction. JA[_] {DE 4654 at pp.3-4}. FDC typically receives the funds from the issuer via the card association, payment network, or debit network prior to paying the merchant. JA[_] {DE 4654 at p.4}.

A transaction occurs when a cardholder purchases something from a merchant who has contracted with FDC, an alliance partner or a processing customer. *Id.* When the merchant swipes the card through the POS terminal (which is often sold or leased, and serviced by FDC), FDC obtains authorization for the transaction, verifying that the cardholder has sufficient credit or adequate funds for the transaction. *Id.* Once the card issuer approves the transaction, FDC or the alliance acquires the transaction from the merchant and then transmits it to the applicable debit network, payment network or card association, which then

routes the transaction information to the card issuer. *Id.* Upon receipt of the transaction, the card issuer delivers funds to FDC via the card association, payment network or debit network. *Id.*

Generally, FDC funds the merchant after receiving the money from the card association, payment network or debit network. *Id.* Each participant in the transaction receives compensation for processing the transaction. *Id.* FDC and its affiliates participate in each step of the settlement of transactions. *Id.*

FDC and its alliances, as merchant acquirers/processors, have certain contingent liabilities for the transactions acquired from merchants. JA[_] {DE 4654 at p.5}. This contingent liability arises in the event of a billing dispute between the merchant and a cardholder that is ultimately resolved in the cardholder's favor. *Id.* In such a case, the transaction is "charged back" to the merchant and the disputed amount is credited or otherwise refunded to the cardholder. *Id.* FDC may, however, collect this amount from the card association if the amount was disputed in error. *Id.* If FDC or the alliance is unable to collect this amount from the merchant, due to the merchant's insolvency or other reasons, FDC or the alliance will bear the loss for the amount of the refund paid to the cardholder. *Id.* FDC often mitigates its risk by obtaining collateral from merchants considered higher risk. *Id.*

-32-

FDC is not the only player in the acquirer/processor field or other fields in the payments industry. In fact, in many spheres, FDC competes with Visa and MasterCard directly. For example, FDC's STAR Network competes with Interlink, owned by Visa, in PIN debit transactions. JA[_] {DE 4654 at p.6}. FDC's merchant acquiring and processing businesses compete directly with Visa and its subsidiaries, including CyberSource. *Id.*

The effect of the Visa and MasterCard rules on FDC can be illustrated with the following example: in a transaction using a Visa or MasterCard for $100.00 with an interchange rate of 1.5% (the cap on certain debit transactions has been changed to $0.21), the card issuer will fund the association $98.50 and bill the cardholder $100.00 on its monthly statement. *Id.* The card association will retain assessment fees of approximately $0.10 and forward $98.40 to FDC. *Id.* FDC will retain, for example, $0.40 and pay the merchant $98.00. *Id.* The $1.50 retained by the card issuer is referred to as interchange and it, like assessment fees, is set by the card association. *Id.* The $0.40 is the merchant discount and is negotiated between the merchant and the merchant acquirer. *Id.* It is important to understand the complexity of the above-described processes, because although the crux of this litigation relates to the interchange fees, the Defendants may attempt to use the overbroad release language to bar future lawsuits related to all of the above.

Injunctive relief barring Visa and MasterCard from acting toward a retail merchant in some manner simply does address the relationships between Visa (or MasterCard) and a more complicated entity, like First Data, that also provides networking, acquiring, and processing services. A processor cares about more issues than whether it can pass interchange fees on to customers and an acquirer seeks more from Visa and MasterCard than just money to compensate for the higher interchange fees it pays in accepting their cards as payment for some incidental services or products.

By extension, counsel representing merchants and retailers could not have advocated for the interests of entities that provide acquiring and processing services and direct competitive networks such as STAR because class plaintiffs do not provide these services. Class counsel further did not seek the input of entities like FDC in shaping the settlement agreement for which counsel now seeks approval.

### 2. FDC's Ability to Act as a Safeguard for Consumers in the Payments Industry is Inhibited by the Overbroad Releases in the Settlement Agreement

Moreover, FDC acts as a safeguard for consumers in the payments industry both by competing directly with Visa and MasterCard through its affiliates and

subsidiaries and by retaining standing to sue Visa and MasterCard for their antitrust violations.

As explained above, FDC competes with Defendants in the acquiring and processing industry. FDC's affiliates include a debit network, an issuer processor, a merchant processor and several merchant acquirers that compete against Visa and MasterCard. FDC's STAR Network competes with Interlink, owned by Visa, in PIN debit transactions. JA[_] {DE 4654 at p.6}. FDC's merchant acquiring and processing businesses compete directly with Visa and its subsidiaries, including CyberSource. *Id.*

Indeed, the importance of preserving FDC's role in ensuring competition in the payments industry is apparent in the long history of antitrust disputes between Visa, MasterCard and other stakeholders in the payments industry beyond merchants. *See, e.g., NaBanco v. Visa U.S.A., Inc.*, 779 F.2d 592 (11th Cir. 1986) (challenge to interchange fees); *SCFC ILC, Inc. v. Visa U.S.A., Inc.*, 36 F.3d 958 (10th Cir. 1994), *cert. denied*, 515 U.S. 1152 (1995) (market concentration in issuing); *Visa U.S.A., Inc. v. First Data Corp.*, No. 02-1786 (N.D. Cal. filed Apr. 15, 2002) (FDC's counterclaim charges monopolization, tying, and concerted refusals to deal); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) (merchant discount and interchange fees); *Wal-Mart Stores, Inc. v. Visa U.S.A.,*

*Inc.*, 396 F.3d 96 (2d Cir. 2005) (interchange fees in debit card transactions and challenging "honor all cards" rules); *Paycom Billing Services v. MasterCard Int'l, Inc.*, 67 F.3d 283 (2d Cir. 2006) (challenging excessive chargeback activity); *United States v. Visa U.S.A., Inc.*, 344 F.3d 229 (2d Cir. 2003) (prohibition on member banks to issue American Express and Discover cards).

The sheer number of these disputes highlights the complex nature of the payments industry, which has been involved in numerous antitrust actions in the past.  The ability of stakeholders like FDC to enforce the antitrust laws is critical to the health and vitality of competition in the industry.  The Settlement Agreement purports to release all rights players in the payments industry, such as FDC, have to sue Visa and MasterCard (and other defendants) from any conduct surrounding interchange fees and any of their rules or related activities.

**B.      There is no cohesion among FDC and other class members.**

In addition to the serious due process violations inherent in the settlement, there should be no certification of a 23(b)(2) class in this case because the requirements of FRCP 23(b)(2) have not been met.  The inclusion of FDC demonstrates that there is no cohesion among class members because FDC is not a merchant, has interests at great variance from merchants, and, indeed, competes with Defendants in the financial services industry.

-36-

The purpose of classes certified under Rule 23(b)(2) is to provide injunctive or declaratory relief for class members with indivisible or homogenous interests. Fed. R. Civ. P. 23(b)(2) ("[T]he party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.").

There must be cohesion amongst class members and plaintiffs cannot manufacture cohesion by converting heterogeneous damage class actions into mandatory class actions. *See Fleetwood Enterprises, Inc. v. McManus*, 320 F.3d 545, 552-54 (5th Cir. 2003). Claims brought under subsection 23(b)(2) contemplate that class members' interests are homogenous; that is, their rights or claims do not involve individual differences. William Moore, et al, 5 Moore's Federal Practice 23.41(2)(b).

The primary reason that classes certified under 23(b)(2) do not automatically require notice and opt-out rights and do not need to meet the predominance and superiority requirements of Rule 23(b)(3) is because the classes in such cases are supposed to be inherently cohesive. *Dukes*, 131 S. Ct. at 2557. Courts have repeatedly held that the presence of individualized facts and issues among class members undermines and defeats class certification because of a lack of

cohesiveness among class members.  *See, e.g., Barnes v. American Tobacco Co.*,
61 F.3d 127, 143, 149 (3d Cir. 1998).

As demonstrated above, due to the different interests between FDC and
other class members (many of whom have different interests from each other,
including American Express, Discover, government entities, and so on), there can
be no serious contention that this class is cohesive in the sense that their interests
are homogenous.  Instead, class members' claims *do* involve individual differences
and final injunctive relief is not  appropriate respecting the class as a whole.

> **C.    A Rule 23(b)(2) injunction is improper here because no single
> injunction or declaratory judgment provides relief to each class
> member and any relief to FDC is illusory.**

The only circumstance appropriate for class certification under Rule 23(b)(2)
is "when a single injunction or declaratory judgment ***would provide relief to each
member of the class***.  [Rule 23(b)(2)] does not authorize class certification when
each individual class member would be entitled to a different injunction or
declaratory judgment against the defendant.  Similarly, it does not authorize class
certification when each class member would be entitled to an individualized award
of monetary damages." *Dukes*, 131 S. Ct. at 2557 (emphasis added); *see also*
Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84
N.Y.U. L. Rev. 97, 132 (2009) (Key to (b)(2) classes is "the indivisible nature of

the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.").  The Second Circuit has further stated that paradigmatic 23(b)(2) classes seek "classwide structural relief that would clearly redound equally to the *benefit of each class member*."  *Marcera v. Chinlund*, 559 F.2d 1231, 1240 (2d Cir. 1979); *see also* Notes of Advisory Committee on Rules, 39 F.R.D. 69, 102 (1966).

Here, the injunctive and declaratory relief that is proposed would not provide relief to FDC at all, much less in a way that is identical or even similar to other class members.  The injunctive relief to be granted primarily consists of two parts:  (1) allowing merchants to form "buying groups" to negotiate with Visa and MasterCard; and the primary relief, which is (2) allowing merchants to surcharge or charge higher prices on consumer transactions paid with a credit card.  Neither of these "remedies" provides any relief to FDC.

First, as early as 1985, the Supreme Court in *Northwest Wholesale Stationers v. Pacific Stationery & Printing Co*., 472 U.S. 284 (1985), and later in 1996 both the Department of Justice and Federal Trade Commission recognized

that merchants may form buyers' groups to negotiate with vendors such as Visa and MasterCard.[7]

Second, the relief related to surcharging has no value to FDC. FDC accepts Visa- and MasterCard-branded credit cards in twelve states[8] that have laws prohibiting the passing of fees onto consumers for use of credit cards which accounts for over 77% of FDC's credit card transactions.[9] JA[_] {DE 4654 at p.17}. Other states are considering similar laws.[10] Class members in these

---

[7] The Department of Justice and Federal Trade Commission issued Statements of Antitrust Enforcement Policy in Health Care in August 1996 that clarified their position that joint purchasing agreements do not raise antitrust concerns: "Such collaborative activities typically allow the participants to achieve efficiencies that will benefit consumers." The DOJ's Guidelines for Collaborations Among Competitors also stated: "Many such [buying collaborations] do not raise antitrust concerns and indeed may be procompetitive." P. 14, August 2000.

[8] The following states prohibit retailers from surcharging consumers who pay with credit cards: *California* (Cal. Civ. Code § 1748.1(a)); *Colorado* (Colo. Rev. Stat. Ann. § 5-2-212(1)); *Connecticut* (Conn. Gen. Stat. Ann. § 42-133ff(a)); *Florida* (Fla. Stat. Ann. § 501.0117(1)); *Kansas* (Kan. Stat. Ann. § 16a-2-403); *Maine* (Maine Rev. Stat. Ann. tit. 9-A, § 8-303(2)); *Massachusetts* (Mass. Gen. Laws Ann. ch. 140D, § 28A(a)(2)); Mississippi (Miss. Code Ann. § 31-7-9); *New York* (N.Y. Gen. Bus. Law § 518); *Oklahoma* (Okla. Stat. Ann. tit. 14A, §§ 2-211, -417); and *Texas* (Tex. Fin. Code Ann. § 339.001(a)); *Utah* (Utah Code § 13-38a-302). SPA215-234.

[9] Michelle Crouch, *Credit Card Surcharges? No Way, Poll Says*, FoxBusiness.com, Aug. 20, 2012, http:// www.foxbusiness.com/personal-finance/2012/08/16/credit-card-surcharges-no-way-poll-says.

[10] Kevin Wack, *18 States Considering Bans on Credit Card Surcharges*, AmericanBanker.com, Mar. 28, 2013, http://www.americanbanker.com/issues/178_61/18-states-considering-bans-on-credit-card-surcharges-1057901-1.html

states—including FDC—are legally prohibited from accepting the injunctive relief granted in this settlement and FDC receives literally no injunctive relief in exchange for releases of claims in the 23(b)(2) settlement. Therefore it cannot pass on fees for 77% of its transactions as a result of accepting transactions in those states.

The district court nevertheless rejected this argument and concluded that, despite the inability of class members to pass on surcharges in these states, class members nationwide would benefit because interchange fees are set nationwide. SPA38. The district court's order called the state laws anti-competitive and anti-consumer and pointed to the possibility that such laws could get repealed. SPA39. What the district court did not do, however, is rely on any fact established in the record to rebut FDC's and other objectors' testimony that any consideration granted to them in exchange for their releases was entirely illusory.

Further, the settlement agreement contemplates that merchants that accept competitor credit cards (*e.g.*, American Express) also cannot pass interchange fees onto consumers if the competitor card does not allow such surcharging. SPA141-145; 154-158. FDC also accepts competitor credit cards including American Express. JA[_] {DE 4654 at p.17)}.

Therefore, given its operations in the states that ban passing on surcharges coupled with its acceptance of American Express, FDC cannot pass on fees on the transactions it accepts on Visa- or MasterCard-branded cards and the primary relief afforded to it in exchange for FDC's broad releases of Defendants is entirely illusory.

### D.    FDC Moved to Opt Out and the Court Should Have Granted the Motion to Preserve FDC's Constitutional Due Process Rights

FDC objected to the preliminary approval of the settlement agreement on November 4, 2012 and to the final approval of the settlement agreement on May 24, 2013.  In addition, FDC successfully moved to intervene in order to file its Motion to Opt Out on May 24, 2013.  FDC's Motion to Opt Out was based on courts' discretionary power to provide opt-out rights under FRCP 23(d).  *See, e.g., Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982); *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 n.6 (9th Cir. 1998) ("This court has held that the option to opt-out is discretionary in cases, like this one, brought under Rule 23(b)(2)"); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1304-05 (2d Cir. 1990) ("[A] district court, in a proper case and in the exercise of sound discretion, may allow a class member to opt out of a [mandatory class] in order to facilitate 'the fair and efficient conduct of the action.'") *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983) (In some cases, a "determination that

-42-

the situation of [a party seeking opt-out rights] was distinguishable from that of the general class provides a sound reason for authorizing" court's granting of opt-out rights when they are not usually authorized by Rule 23); *Crawford v. Honig*, 37 F.3d 485, 487 n.2 (9th Cir.1995); *Williams v. Burlington Northern, Inc.*, 832 F.2d 100, 103 (7th Cir. 1987), *cert. denied*, 485 U.S. 991 (1988); *Penson v. Terminal Transport Co.*, 634 F.2d 989, 994 (5th Cir. 1981). *O'Brien v. Nat'l. Prop. Analysts Partners*, 739 F. Supp. 896, 901 (S.D.N.Y. 1990); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 482 (S.D.N.Y. 1998) ("The fact that the scope of the release has been fully disclosed in the Class Notice with opportunity for opting out strongly supports the scope of the releases."); *see also* Herbert B. Newberg & Alba Conte, 5 Newberg on Class Actions § 16.17 (4th ed. 2012) (courts authorized under discretionary power to grant opt-out rights).  It is fundamental that a class member's right to notice and an opportunity to opt out should be preserved whenever possible. *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 848 (1999).

The district court did not explicitly rule on FDC's Motion to Opt Out and the motion was thus implicitly denied.  In order to preserve FDC's constitutional due process rights and to correct some of the problems, the Court of Appeal can remand to the district court to grant FDC's Motion to Opt Out, removing FDC from a class settlement in which it wants no part.

# CONCLUSION

Based upon the foregoing, this Court should reverse the district court's final approval of the Rule 23(b)(2) class settlement and remand the action for further proceedings.  At a minimum, this Court should remand to the district court with orders to grant FDC's Motion to Opt Out of Rule 23(b)(2) Class Settlement.

DATED:  June 16, 2014                    **PERKINS COIE LLP**

By: */s/ Jason A. Yurasek*
    Jason A. Yurasek
    JYurasek@perkinscoie.com

Attorneys for Objectors-Appellants
First Data Corporation, First Data
Merchant Services Corporation, First
Data Government Solutions, TASQ
Technology, Inc., TRS Recovery
Services, Inc., Telecheck Services, Inc.
and their affiliates

## CERTIFICATION OF COMPLIANCE
## PURSUANT TO FED. R. APP. 32(A)(7)(C) AND
## CIRCUIT RULE 32-1 FOR CASE NUMBER 12-4671

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,924 words, excluding portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

DATED:  June 16, 2014                **PERKINS COIE LLP**

By: */s/ Jason A. Yurasek*
     Jason A. Yurasek
     JYurasek@perkinscoie.com

Attorneys for Objectors-Appellants
First Data Corporation, First Data
Merchant Services Corporation, First
Data Government Solutions, TASQ
Technology, Inc., TRS Recovery
Services, Inc., Telecheck Services, Inc.
and their affiliates

# CERTIFICATE OF SERVICE

U.S. Court of Appeals Docket Number(s): 12-4671

I hereby certify that I electronically filed and served the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on June 16, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Signature:    */s/ Sheila M. Merrill*