# 12-4671-cv(L),

12-4708-cv(CON), 12-4765-cv(CON), 13-4719-cv(CON), 13-4750-cv(CON), 13-4751-cv(CON), 13-4752-cv(CON), 14-32-cv(CON), 14-117-cv(CON), 14-119-cv(CON), 14-133-cv(CON), 14-157-cv(CON), 14-159-cv(CON), 14-192-cv(CON), 14-197-cv(CON), 14-219-cv(CON), 14-225-cv(CON), 14-241-cv(CON), 14-250-cv(CON), 14-266-cv(CON), 14-303-cv(CON), 14-331-cv(CON), 14-349-cv(CON), 14-379-cv(CON), 14-404-cv(CON), 14-422-cv(CON), 14-443-cv(CON), 14-480-cv(CON), 14-497-cv(CON), 14-530-cv(CON), 14-567-cv(CON), 14-584-cv(CON), 14-606-cv(CON), 14-663-cv(CON), 14-837-cv(CON)

## United States Court of Appeals

*for the*

## Second Circuit

IN RE PAYMENT CARD INTERCHANGE FEE AND
MERCHANT DISCOUNT ANTITRUST LITIGATION

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**PROOF BRIEF FOR OBJECTORS-APPELLANTS AMERICAN EXPRESS
COMPANY, AMERICAN EXPRESS TRAVEL RELATED SERVICES
COMPANY, INC., SERVE VIRTUAL ENTERPRISES, INC., ANCA 7 LLC
D/B/A VENTE PRIVEE, USA, AMEX ASSURANCE COMPANY
AND ACCERTIFY, INC.**

PHILIP C. KOROLOGOS
BOIES, SCHILLER & FLEXNER LLP
*Attorneys for Objectors-Appellants American Express
Company, American Express Travel Related
Services Company, Inc., Serve Virtual Enterprises,
Inc., ANCA 7 LLC d/b/a Vente Privee, USA, Amex
Assurance Company and Accertify, Inc.*
575 Lexington Avenue
New York, New York 10022
(212) 446-2300

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, objectors-appellants American Express Company, American Express Travel Related Services Company, Inc., Serve Virtual Enterprises, Inc., ANCA 7 LLC d/b/a Vente Privee, USA, AMEX Assurance Company, and Accertify, Inc. state the following:

American Express Company is a publicly traded company.  It has no parent company; however, Berkshire Hathaway, Inc. owns more than 10 percent of its outstanding common shares.  American Express Travel Related Services Company, Inc., Serve Virtual Enterprises, Inc., AMEX Assurance Company, and Accertify, Inc. have not issued shares to the public and are, directly or indirectly, wholly owned subsidiaries of American Express Company.

ANCA 7 LLC d/b/a Vente Privee, USA has changed its name to Vente-privee USA LLC.  Vente-privee USA LLC (f/k/a ANCA 7 LLC) has not issued shares to the public and is owned by Amex Services, Inc. (a wholly owned subsidiary of American Express Travel Related Services Company, Inc.) and Vente-privee USA Brands, Inc.  Vente-privee USA Brands, Inc. is an indirect subsidiary of Vente-privee.com, an unaffiliated third party.

i

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ....................................................... i

STATEMENT OF JURISDICTION ........................................................ vii

STATEMENT OF ISSUES FOR REVIEW .......................................... viii

STATEMENT OF THE CASE ................................................................ 1

STATEMENT OF FACTS ..................................................................... 3

A.   American Express, Its Operations, and Its Defense of Its Non-Discrimination Provisions. ...................................................... 3

B.   The Terms of the Proposed Settlement Agreement ......................................... 5

C.   Proceedings in the District Court ......................................................... 9

Summary of Argument ..................................................................... 11

Standard of Review ......................................................................... 14

I.   The Fundamental Conflict Between the Class Representatives and American Express Prevents the Proper Certification of the Rule 23(b)(2) Settlement Class. .............................................................. 14

    A.   Rule 23 Requires an Absence of Antagonism Between Absent Class Members and the Class Representatives. ................................... 15

    B.   The Class Cannot Be Certified Because the Class Plaintiffs Have Interests Antagonistic to and Cannot Adequately Represent American Express. ........................................... 17

    C.   Class Certification Violates the Commonality and Typicality Requirements of Rule 23(a)(2) and Rule 23(a)(3). ............................. 24

II.   The Settlement Negotiated by the Class Representatives is Contrary to American Express's Interests. ....................................................... 25

    A.   American Express May Be Prejudiced if It Is Included in the Class Because of the Breadth of the Language of the Release. .......... 25

ii

      B.      Only Claims Typical of All Class Members Can Be Released. .........27

III.    Because the Rule 23(b)(2) Settlement Class Should Not Have Been
       Certified, the Settlement Should Not Have Been Approved.........................33

IV.    On Remand, the Court Should Condition Final Approval on
       Redefining the Class So that It Does Not Include American Express or
       Its Subsidiaries.................................................................................................33

CONCLUSION .......................................................................................................38

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Allen v. Dairy Farmers of Am., Inc.*,
   279 F.R.D. 257 (D. Vt. 2011) ............................................................21

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................................ 16, 19, 34

*Authors Guild v. Google Inc.*,
   770 F. Supp. 2d 666 (S.D.N.Y. 2011) ...............................................30

*Bieneman v. City of Chicago*,
   864 F.2d 463 (7th Cir. 1988) ............................................................20

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010) .............................................................15

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco*
   *Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) .............................................. 16, 19, 34

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) .............................................................17

*EEOC v. Gen. Tel. Co. of Nw., Inc.*,
   599 F.2d 322 (9th Cir 1979),
   *aff'd*, 446 U.S. 318 (1980) ...............................................................35

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)..........................................................................24

*Goldman v. C.I.R.*,
   39 F.3d 402 (2d Cir. 1994) ..............................................................26

*In re AIG, Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012) .............................................................14

*In re Auction Houses Antitrust Litig.*,
   42 Fed. App'x 511, 2002 WL 1758897 (2d Cir. July 30, 2002) .......30

*In re Joint Eastern & Southern Dist. Asbestos Litig.*,
   982 F.2d 721 (2d Cir. 1992) ....................................................................... 15, 21

*In re Literary Works in Elec. Databases Copyright Litig.*,
   654 F.3d 242 (2d Cir. 2011) ...................................................... 16, 17, 19, 33, 34

*In re Sept. 11 Prop. Damage Litig.*,
   650 F.3d 145 (2d Cir. 2011) ..............................................................................14

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007) ................................................................. 28, 29

*Martens v. Smith Barney, Inc.*,
   181 F.R.D. 243 (S.D.N.Y. 1998) .......................................................................30

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009) ..............................................................................30

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*,
   660 F.2d 9 (2d Cir. 1981) ............................................................. 13, 28, 30, 31

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999)...........................................................................................33

*Pickett v. Iowa Beef Processors*,
   209 F.3d 1276 (11th Cir. 2000) ........................................................................22

*Robinson v. Metro-North Commuter R.R. Co.*,
   267 F.3d 147 (2d Cir. 2001) ..............................................................................35

*Rosado v. Wyman*,
   322 F. Supp. 1173 (E.D.N.Y. 1970),
   *aff'd*, 437 F.2d 619 (2d Cir. 1970),
   *aff'd mem.*, 402 U.S. 991 (1971) ....................................................................28

*Spano v. Boeing Co.*,
   633 F.3d 574 (7th Cir. 2011) ............................................................................20

*TBK Partners, Ltd. v. Western Union Corp.*,
   675 F.2d 456 (2d Cir. 1982) ..............................................................................28

*Telecomm Tech. Servs., Inc. v. Siemans Rolm Commc'ns, Inc.*,
   172 F.R.D. 532 (N.D. Ga. 1997) ......................................................................20

*United States v. Visa U.S.A., Inc.*,
   163 F. Supp. 2d 322 (S.D.N.Y. 2001) ...............................................27

*United States v. Visa U.S.A., Inc.*,
   344 F. 3d 229 (2d Cir. 2003) ...........................................................27

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)...................................................... 16, 24, 35

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ..............................................................28

## <u>Rules</u>

Federal Rule of Civil Procedure 23 ........................................ 1, 11, 14, 15, 27, 35

Federal Rule of Civil Procedure 23(a) ........................................................ 15, 16

Federal Rule of Civil Procedure 23(a)(4) .................... 12, 15, 16, 17, 19, 23, 24, 25

Federal Rule of Civil Procedure 23(b)(2) .................................................. 15, 23, 35

Federal Rule of Civil Procedure 23(c)(5) ...............................................................34

## STATEMENT OF JURISDICTION

The District Court entered a memorandum and order granting final approval of a class settlement agreement in this multi-district antitrust litigation on December 13, 2013.  American Express, a non-party, filed a timely notice of appeal on January 8, 2014.  The District Court entered a Class Settlement Order and Final Judgment on January 14, 2014.  American Express amended its notice of appeal on February 12, 2014 to include the Class Settlement Order and Final Judgment.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 1292(a)(1).  The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337(a).

## STATEMENT OF ISSUES FOR REVIEW

This appeal arises from a class settlement in an MDL brought by merchants against Visa, MasterCard, and their issuing and acquiring banks.  Although American Express's core business is providing payment services to merchants and issuing cards to be used at such merchants in competition with Visa, MasterCard, and the other defendants, American Express was part of the putative class by virtue of having a small number of merchant subsidiaries that accept Visa and MasterCard.  Over American Express's objection, the District Court certified a non-opt-out settlement class under Rule 23(b)(2) and approved a class settlement agreement that purports to bind American Express.

The question presented is whether certification of a class that included American Express and approval of the class settlement were proper even though (i) the other merchants in the purported class are antagonistic to American Express and have sued American Express for engaging in conduct similar to Visa and MasterCard; (ii) the Class Plaintiffs touted as a benefit of the settlement that it will put pressure on American Express and give merchants incentives to breach or cancel their contracts with American Express; and (iii) Class Plaintiffs could not and did not adequately represent American Express's unique interests.

## STATEMENT OF THE CASE

American Express's appeal raises the question of whether a settlement class can be certified, and a settlement with that class approved, where the class consists of members that are directly and expressly antagonistic with one another on the very issues being settled.

American Express is a member of the non-opt-out injunctive relief class certified by the court below because in a small part of American Express's business, American Express's subsidiaries act as merchants that accept Visa and MasterCard. American Express's principal business is to compete vigorously with defendants in providing payment services to merchants and issuing cards for use at those merchants. Those merchants (with rare exceptions) also accept Visa and MasterCard and thus are members of the class while also being American Express's merchant customers. Moreover, those merchants are part of a purported class asserting some of the same claims against American Express that the overlapping class here proposes to settle against defendants.

American Express argued below that class certification would violate Rule 23 because, among other reasons, the Class Representatives are not capable of adequately representing the unique interests of American Express. American Express noted that the lawsuit by the overlapping class against American Express and the motivations expressed by the Class Representatives in reaching this

settlement are sufficient to establish that the Class Representatives are antagonistic to American Express, and that those Class Representatives could not adequately represent American Express.  Because of the antagonistic relationship and the inadequate representation of American Express as a class member, American Express argued that a class could not properly be certified if it included American Express.

American Express also argued that its inclusion in the class may cause prejudice, including because the expansive release negotiated by the Class Representatives could leave open the possibility that defendants, *i.e.*, American Express's competitors, could try to claim that American Express has released claims it has as a competitor against Visa, MasterCard, and the bank defendants (claims not asserted by the Class Representatives).  American Express suggested that one way to remedy this certification issue was to redefine the class to not include any entity that was a defendant or under common ownership and control of any defendant in any suit brought by members of the class on grounds similar to the claims asserted here.

The District Court certified the class over American Express's objections.  It held that the "interests of the Class Plaintiffs and the rest of the (b)(2) class are not

antagonistic." (Dec. 13, 2013 Opinion at 47 (SPA 52).) [1]  The court also approved

the settlement, observing in part that doing so "will assist in the effort to 'fix'"

what some merchants have called the "American Express problem"—*i.e.*, that

merchants who choose to accept American Express may not be able to surcharge

due to the interaction of American Express's contract provisions and the way the

settlement here is structured.  (*Id.* at 37 (SPA 42).)

## STATEMENT OF FACTS

### A.    AMERICAN EXPRESS, ITS OPERATIONS, AND ITS DEFENSE OF ITS NON-DISCRIMINATION PROVISIONS.

American Express is a global services company and a world leader in

providing charge and credit cards to consumers, small businesses, and

corporations.  In its core business, in which American Express acts as a payment

card network, issuer, merchant acquirer, and transaction processor, American

Express competes with, among others, Visa and MasterCard as well as defendants

that are Visa's and MasterCard's issuers and acquirers.  (*See* Declaration of

Stephen B. McCurdy, dated May 23, 2013 ("McCurdy Decl.") ¶ 3 (DA _____).) [2]

The vast bulk of American Express's revenues comes from this core business.  (*Id.*

¶ 11 (DA _____).)

--------

[1]    Citations to "SPA" refer to the Special Appendix.

[2]    Citations to "DA" refer to the Deferred Appendix.

In a small part of its business, certain American Express subsidiaries act as merchants that accept Visa and MasterCard cards for travel, prepaid cards, insurance, and other services.[3]  Less than two percent of American Express's world-wide revenue comes from sales processed using Visa and/or MasterCard cards in the United States.  (*Id.* ¶ 11 (DA ____).)

In ongoing litigation initiated by an overlapping putative class of merchants, American Express is defending its right under the antitrust laws to maintain contract provisions that prevent merchants that choose to accept American Express cards from steering customers away from using these cards or from differentially surcharging American Express transactions at a rate higher than that applied to other networks' credit, charge, and debit cards.[4]  *See American Express Anti-Steering Rules Antitrust Litig.*, MDL No. 2221 (NGG) (RER) (E.D.N.Y); *see also United States v. American Express et al.*, 10-cv-4496 (NGG) (RER) (E.D.N.Y.).

---

[3]    The following entities are direct or indirect subsidiaries of American Express Company that accept Visa and MasterCard branded cards: American Express Travel Related Services Company, Inc., Serve Virtual Enterprises, Inc., ANCA 7 LLC d/b/a Vente Privee, USA, AMEX Assurance Company, and Accertify, Inc.  (McCurdy Decl. ¶¶  5, 8, 9, 10.) (DA ____).)

[4]    After the District Court granted final approval in the instant case, American Express entered into a class settlement agreement with the class plaintiffs who challenged American Express's non-discrimination provisions in MDL 2221.  The settlement, which resolves injunctive relief claims and does not resolve claims for past money damages, was preliminarily approved on February 11, 2014, and a fairness hearing is set for September 17, 2014.

Among other defenses, American Express maintains that its contract provisions with merchants are procompetitive.  As a matter of policy, American Express seeks to prevent discriminatory treatment and discriminatory surcharging against American Express cardmembers, not to encourage it.  This policy extends to the entire American Express organization, including the operations in which American Express and/or its subsidiaries act as merchants.  (McCurdy Decl. ¶¶ 12-13 (DA ____).)

## B.    THE TERMS OF THE PROPOSED SETTLEMENT AGREEMENT

The Settlement Agreement in this action proposed that the District Court certify two classes for settlement purposes:  one under Rule 23(b)(2) (the injunctive relief class) and one under Rule 23(b)(3) (the damages class). (Settlement Agreement ¶ 2 (SPA 118).)  The 23(b)(2) class is defined to consist of "all persons, businesses and other entities" that accept Visa and MasterCard as of the date of preliminary approval "or in the future."  (*Id.* ¶ 2(b) (SPA 118).)  The Settlement Agreement states that exclusions from the 23(b)(2) class "shall not be permitted."  (*Id.*)

The Settlement Agreement defines the parties that will be bound by the release to be granted by the 23(b)(2) class (the "Rule 23(b)(2) Settlement Class Releasing Parties") as "each and every member of the Rule 23(b)(2) Settlement Class . . .  whether or not they object to this Class Settlement Agreement, and

5

whether or not they exercise any benefit provided under the Class Settlement Agreement." (*Id.* ¶ 66 (SPA 166).)  In addition to the class members themselves, the Rule 23(b)(2) Settlement Class Releasing Parties include "each and every member of the Rule 23(b)(2) Settlement Class, and any of their respective past, present, or future . . . *parents, subsidiaries, divisions, affiliates*, . . . predecessors, successors, and assigns." (*Id.* (emphasis added).)

Because a very small portion of American Express's revenue comes from sales processed on Visa and MasterCard cards, each of the American Express entities that accepts Visa and MasterCard cards is thus a member of the proposed Rule 23(b)(2) class.  Each of those entities' "parents" and "affiliates" are defined to be included in the proposed Rule 23(b)(2) Settlement Class Releasing Parties. (*See id.* ¶ 66 (SPA 166).).  Thus, the Settlement Agreement contemplates that all of American Express Co. would be bound by the release.

The Rule 23(b)(2) Settlement Class Releasing Parties will grant an expansive release to Visa and MasterCard and the other defendants.  (*See generally id.* ¶¶ 66-70 (SPA 166-73).)  The Settlement Agreement states that all members of the Rule 23(b)(2) class shall release Visa and MasterCard, among others, from:

> "*any and all manner of claims*, demands, actions, suits, and causes of action, whether individual, class, representative, *parens patriae*, or otherwise in nature, for any form of declaratory, injunctive, or equitable relief, or any damages or other monetary relief relating to the period after the date of the Court's entry of the Class Settlement Preliminary Approval Order, regardless of when such claims accrue, *whether known or unknown,*

6

*suspected or unsuspected*, in law or in equity that any Rule 23(b)(2) Settlement Class Releasing Party *now has, or hereafter can, shall, or may in the future have*, arising out of or relating in any way to any conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act of any Rule 23(b)(2) Settlement Class Released Party *that are alleged or which could have been alleged* from the beginning of time until the date of the Court's entry of the Class Settlement Preliminary Approval Order in any of the Operative Class Complaints or Class Action complaints, or in any amendments to the Operative Class Complaints or Class Action complaints, *including but not limited to any claims based on or relating to . . .*"

(*Id.* ¶ 68 (SPA 169-70) (emphasis added).)  The Settlement Agreement then identifies a non-exhaustive list of nine broad subcategories of conduct (*id.* ¶ 68(a)-(i) (SPA 169-72)) and, referring to these subcategories, concludes: "it is expressly agreed, for purposes of clarity, without expanding or limiting the foregoing, that any claims based on or relating to" subparagraphs "(a)-(i) above are claims that were or could have been alleged in this Action." (*Id.* (SPA 172).)

The conduct described in subparagraphs 68(a)-(i) is expansive.  In addition to conduct related to interchange rules, merchant fees, and rules regarding surcharging (*id.* ¶ 68(a)-(c) (SPA 170)), it also covers any actual or alleged agreement between or among Visa, MasterCard, and any MDL 1720 defendant relating to "conduct or Rules of any Visa Defendant or any MasterCard defendant."  (*Id.* ¶ 68(d) (SPA 170-71).)  "Rule" is a defined term, meaning "any rule, by-law, policy, standard, guideline, operating regulation, practice, procedure, activity, or course of conduct relating to any Visa-Branded Card or any MasterCard-Branded Card."  (*Id.* ¶ 1(mm) (SPA 113).)   The definition of "Rule"

thus extends to nearly any action by Visa, MasterCard, and the defendant banks.

Similarly, Paragraph 68(g) purports to release claims based on the "future effect"

or the continued imposition of or adherence to any existing Rule or any Rule to be

modified by the Settlement Agreement, as well as "any Rule that is substantially

similar" to either an existing Rule or a Rule to be modified by the Settlement

Agreement.  (*Id.* ¶ 68(g) (SPA 171).)

> The Settlement Agreement further states,
>
> "For purposes of clarity, it is specifically intended for the release and covenant not to sue provisions of Paragraphs 66-70 above to preclude all members of the Rule 23(b)(2) Settlement Class from seeking or obtaining any form of declaratory, injunctive, or equitable relief, or damages or other monetary relief relating to the period after the date of the Court's entry of the Class Settlement Preliminary Approval Order with respect to any Rule of any Visa Defendant or any MasterCard Defendant, and the compliance by any Bank Defendant with any such Rule, as it is alleged to exist, now exists, may be modified in the manner provided in Paragraphs 40-45 and 53-57 above, or may in the future exist in the same or substantially similar form thereto."  (*Id.* ¶ 71 (SPA 173-74).)

The terms of the Settlement Agreement make no distinction between the

claims released by class members in their capacities as merchants that accept Visa

and MasterCard branded cards and claims of a class member like American

Express, which is a network competitor of Visa and MasterCard and a card-issuing

and merchant acquiring competitor to the MDL 1720 defendant banks.  There are

no Class Representatives that are merchants that, like American Express, also

compete with defendants.  And American Express is aware of no other class

8

member that, like American Express, is being sued by other class members

asserting claims similar to those the Settlement Agreement here purports to

compromise.

## C.    PROCEEDINGS IN THE DISTRICT COURT

American Express opted out of the Rule 23(b)(3) class and objected to

preliminary approval and final approval of the settlement.

In seeking approval, Class Counsel repeatedly told the District Court that the

settlement should be approved because it puts pressure on American Express's

policies regarding non-discrimination and gives class members incentives to ignore

those policies and breach their contracts so that they can take advantage of the

settlement rule changes.  Class Counsel stated:

- "One of the significant benefits of the rules reforms obtained by Class Plaintiffs is that the substantial rescission of Visa and MasterCard's rules exposes American Express's policies to new competitive pressures." (Letter to Judge Orenstein from Class Counsel dated Dec. 10, 2012 (DA _____).)

- "In addition, merchants that want to surcharge Visa and MasterCard may choose to ignore American Express's anticompetitive rules (which are currently being challenged by the Justice Department), and surcharge all three brands, or may choose to discontinue accepting American Express." (Class Plaintiff's Opening Brief in Support of Final Approval at 38 (DA _____).)

- "Thus, by disincentivizing bank defection to American Express, the level-playing-field provisions may benefit rather than harm merchants." (Class Plaintiffs' Reply Brief in Further Support of Final Approval at 29 (DA _____).)

9

- "Both the Class and the individual plaintiffs in the American Express litigation believe that the settlement of MDL 1720 will help both of them and the Department of Justice to prevail in that litigation" (*i.e.*, the claims against American Express). (Class Plaintiffs' Response to Sykes Report dated Sept. 4, 2013 at 7 (DA ____).)

- "However, even if the American Express rule is not eliminated soon, or even ever, there remain millions of merchants in the United States who do not accept American Express cards, and therefore are not subject to the level playing field limitation. Indeed, *there may be many more merchants who elect to terminate their acceptance of American Express in order to be able to surcharge Visa and MasterCard credit cards*." (*Id.* at 8 (DA ____) (emphasis added).)

In its objection to final approval, American Express suggested that one way to resolve American Express's objection would be to define the Rule 23(b)(2) class to not include "any entity that would otherwise be a member of the class and that at the time the settlement agreement was being negotiated was a defendant, or was under common ownership and control of any defendant, in any suit brought by other members of the class on grounds similar to any claims asserted here." (American Express's Objection to Final Approval at 25 (DA ____); *see also* Sept. 12, 2013 Hearing Tr. at 122:16-25 (DA ____).) In response, Class Plaintiffs told the District Court that claims arising in any capacity other than a merchant capacity are not released (Class Plaintiffs' Brief in Support of Final Approval at 45-46 (DA ____)), and Defendants stated that "there is no merit to objectors' contentions that the releases would have the effect of barring their claims based on injuries as

10

payment network competitors or as ATM operators."  (Defendants' Reply Brief in Support of Final Approval at 33 (DA ____).)

The District Court summarily rejected American Express's argument that there was a fundamental conflict between American Express and the rest of the merchant class, holding that "all merchants have the same interest in being able to inform cardholders at the point of sale of the acceptance costs of their cards and to steer them to lower-cost alternatives or recoup the cost of acceptance."  (Dec. 13, 2013 Opinion at 46 (SPA 51).)  The District Court did not address American Express's request to redefine the class and stated that it was "sufficiently clear from both the text and context of the releases that these class members are releasing only claims that merchants have alleged or could have alleged in this case in their capacity as merchants."  (*Id.* at 42 (SPA 47).)

## SUMMARY OF ARGUMENT

The District Court abused its discretion in certifying the injunctive relief class because the class, as certified, consists of members that are directly and expressly antagonistic with one another on the very issues being settled.  Rule 23 requires that there be no antagonism between absent class members and class representatives.  Here, the Class Representatives are clearly adverse to American Express (certain subsidiaries of which are class members and whose entire enterprise is a releasing party under the settlement).  American Express's interests

lie in protecting its cardmembers from discriminatory treatment by merchants.  By contrast, members of the merchant-only class may be interested in relief that permits them to surcharge credit and charge transactions in ways that some merchants argue could benefit their businesses.  While the Class Plaintiffs were pursuing their antitrust steering claims against Visa, MasterCard, and the bank defendants, American Express was defending itself against similar class claims brought by an overlapping putative class.  Class Plaintiffs even stated that one of the benefits to the class of this settlement was to increase pressure on American Express to change its rules (*i.e.*, those under antitrust attack in the overlapping class action against American Express).  The conflict is fundamental, and the certification therefore failed to fulfill Rule 23(a)(4)'s adequacy of representation requirement.  For similar reasons, the class certification also failed the commonality and typicality requirements of Rules 23(a)(2) and (3).

American Express may be prejudiced by the release negotiated by the Class Representatives.  Although the settlement proponents and the District Court have interpreted the release as being limited to claims that arise in class members' capacities as merchants, such a limitation cannot be found on the face of the language used in the release.  The release extends in perpetuity, and there is the risk of substantial prejudice to American Express should another court or one of the defendants in the future interpret the words in the release to mean something

12

other than what the settling parties have said they mean.  This Court has held that class representatives cannot release claims on behalf of a class that they do not share with the rest of the class.  *See Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 17 (2d Cir. 1981).

Because the Rule 23(b)(2) class should not have been certified in a manner that included American Express, the District Court's approval of the settlement agreement, which depends upon that class certification, was likewise in error.

This Court should vacate the judgment below and remand with instructions to condition class certification and settlement approval on redefining the Rule 23(b)(2) settlement class not to include American Express and its subsidiaries.  Not including American Express in the class will not jeopardize the ability of the Settlement Agreement to achieve certainty with respect to injunctive relief, or create the risk of inconsistent obligations on the part of Defendants, because American Express is in the process of defending rules similar to some of the rules the class here was attacking, including by showing how its rules are procompetitive.

At a minimum, if this Court believes that the Rule 23(b)(2) class can be certified with American Express in it, this Court should remand to the District Court with instructions to amend the judgment to clarify that, to the extent that American Express and its subsidiaries are Rule 23(b)(2) Settlement Class

13

Releasing Parties, they are releasing claims only in their capacities as merchants and not in any other capacity.

## STANDARD OF REVIEW

This Court reviews "both a district court's ultimate decision on class certification and its rulings as to individual Rule 23 requirements for abuse of discretion." *In re AIG, Inc. Sec. Litig.*, 689 F.3d 229, 237 (2d Cir. 2012). "To the extent a district court's ruling on an individual Rule 23 requirement involves an issue of law, our review is de novo." *Id.* This Court also "generally" reviews "a district court's approval of a settlement agreement for abuse of discretion." *In re Sept. 11 Prop. Damage Litig.*, 650 F.3d 145, 151 (2d Cir. 2011). Here, the District Court certified the Rule 23(b)(2) settlement class and ordered injunctive relief on a class-wide basis when it granted Class Plaintiffs' motion for final approval. This was an abuse of discretion because the requirements of Rule 23 were not satisfied.

## ARGUMENT

## I.   THE FUNDAMENTAL CONFLICT BETWEEN THE CLASS REPRESENTATIVES AND AMERICAN EXPRESS PREVENTS THE PROPER CERTIFICATION OF THE RULE 23(B)(2) SETTLEMENT CLASS.

The non-opt-out injunctive relief class should not have been certified because the Class Representatives are—and, indeed, a majority of the class is— antagonistic to, rather than representative of, American Express with respect to the

14

particular claims at issue in this action.  *See In re Joint Eastern & Southern Dist. Asbestos Litig.*, 982 F.2d 721, 739 (2d Cir. 1992) (finding an "overwhelming" conflict where a mandatory non-opt-out class included both health claimants who were exposed to asbestos and co-defendant manufacturers of asbestos).  As long as American Express remains a class member, the proposed class violates the adequacy of representation requirement under Rule 23(a)(4) as well as the commonality and typicality requirements of Rules 23(a)(2) and (3) and cannot remain certified.  Thus, the Settlement Agreement should not have been approved because there is no certifiable Rule 23(b)(2) class to be bound by the settlement.

### A.    Rule 23 Requires an Absence of Antagonism Between Absent Class Members and the Class Representatives.

"Under Rule 23(b)(2), '[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  *Brown v. Kelly*, 609 F.3d 467, 477 (2d Cir. 2010) (alterations in original) (emphasis omitted) (quoting Fed. R. Civ. P. 23(b)(2)).  In order to protect absent class members, Rule 23(a) requires that the class satisfy four threshold requirements: "(1) numerosity ('the class is so numerous that joinder of all members is impracticable'), (2) commonality ('there are questions of law or fact common to the class'), (3) typicality ('the claims or defenses of the representative

parties are typical of the claims or defenses of the class'), and (4) adequacy of representation ('the representative parties will fairly and adequately protect the interests of the class')." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting Fed. R. Civ. P. 23(a)). These requirements ensure "that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011).

"When a court is asked to certify a class and approve its settlement in one proceeding, the Rule 23(a) requirements designed to protect absent class members 'demand undiluted, even heightened, attention.'" *Literary Works*, 654 F.3d at 249 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). To satisfy the adequacy of representation requirement under Rule 23(a)(4), "the named plaintiffs must 'possess the same interest[s] and suffer the same injur[ies] as the class members.'" *Id.* (alteration in original) (quoting *Amchem*, 521 U.S. at 625-26). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* (quoting *Amchem*, 521 U.S. at 625)); *see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) ("In determining whether the representative parties will fairly and adequately protect the interests of the class, a district court must determine whether plaintiff's interests are antagonistic

16

to the interest of other members of the class.") (internal quotation marks and citation omitted).

"Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Finally, Rule 23(e)(2) further requires that a district court examine the substance of the proposed class settlement and conclude that it is "'fair, reasonable, and adequate.'" *Literary Works*, 654 F.3d at 249 (quoting Fed. R. Civ. P. 23(e)(2)).

**B.    The Class Cannot Be Certified Because the Class Plaintiffs Have Interests Antagonistic to and Cannot Adequately Represent American Express.**

The injunctive relief class as currently certified violates Rule 23(a)(4) and thus Rule 23(b) because the Class Plaintiffs and their counsel cannot simultaneously represent the interests of merchants whose primary business is selling goods or services for which they accept Visa and/or MasterCard cards and entities like American Express, whose fundamental role is to operate a network, issuing business, acquiring business, and transaction processing business that competes with Visa, MasterCard, and their member banks, among others.

First, there is an inherent conflict because American Express sits across the table from millions of members of the injunctive relief class. The merchant-only

class members may be interested in relief that permits merchants to surcharge credit and charge transactions in ways that some merchants argue could benefit their businesses. By contrast, American Express's primary interest, which extends throughout its corporate structure, is to protect its ability to compete effectively against Visa, MasterCard, and others in the payments industry by, among other efforts, shielding its cardmembers from discriminatory treatment imposed by merchants (including discriminatory surcharges)—a position antithetical to the claims being settled by the Rule 23(b)(2) class.

Second, American Express works with merchants who choose to accept the American Express Card to find ways to help the merchant grow its business and grow American Express's business at the merchant. Central to that ability is the promise that American Express makes to its cardmembers that merchants that choose to accept the American Express Card will warmly welcome the Card. The Class Plaintiffs clearly did not adequately represent American Express's interests when it brokered a settlement that would have the effect of interfering with a consumer's choice of payment form at the point of sale.

Third, these fundamental conflicts are underscored by the fact that many of the merchant plaintiffs in MDL 1720 (represented by the same counsel) are pursuing separate lawsuits against American Express to give them complete freedom to discriminate against consumers who wish to use American Express

payment cards.  Finally, American Express does not support this settlement.

American Express would never seek to remedy the conduct challenged in this suit

by agreeing with Visa and MasterCard to rule changes that encourage merchants to

engage in discriminatory treatment of customers who choose to use American

Express cards.  The relief to which the settlement proponents have agreed is

fundamentally inconsistent with the defenses that American Express has pursued

regarding the challenges to its own non-discrimination provisions, including

against the Department of Justice, several large supermarkets and drugstores, and

the putative class in MDL 2221.

    Courts have made clear that a class should not be certified if some of its

members' interests are antagonistic to the interests of other members of the class.

*See, e.g.*, *Amchem*, 521 U.S. at 625-29 (class including both currently injured

asbestos victims who would prefer more immediate payments and exposure-only

asbestos victims who were interested in ensuring an ample, inflation-protected

fund for the future, could not be certified); *Literary Works*, 654 F.3d at 254-58

(vacating judgment certifying class where class representatives held copyright

claims based on both registered and unregistered works—which were valued

differently under the proposed settlement—and certain class members held claims

based solely on unregistered works); *Central States*, 504 F.3d at 246 (Rule 23(a)(4)

not satisfied where class included all employee welfare plans that contracted with

defendant, regardless of whether those plans were self-funded, insured, or capitated, because self-funded plans may have suffered greater injury and deserved separate representation).[5]

There can be no dispute that the interests of the Class Plaintiffs and their counsel are antagonistic to the interests of American Express, and no party to this action has claimed otherwise. The Class Plaintiffs are members of a class that is suing American Express on claims similar to those being settled against defendants here. Likewise, far from vindicating any of American Express's rights in this action, the settlement reached by Class Plaintiffs—in their own words—allegedly "exposes American Express's policies to new competitive pressures." (Letter to Judge Orenstein from Class Counsel dated Dec. 10, 2012 at 3 (DA ____).) Class Plaintiffs assert that this exposure is "one of the significant benefits of the rules reforms obtained by Class Plaintiffs." (*Id.*) Indeed, in defending the Visa/MasterCard rule changes in the settlement, Class Plaintiffs have made clear that merchants that choose to accept American Express have an incentive to "ignore" (in other words, breach) provisions in their American Express contracts

---

[5]    *See also Spano v. Boeing Co.*, 633 F.3d 574, 587 (7th Cir. 2011) (refusing to certify class where some employees may have benefited from the challenged conduct while others may have been harmed); *Bieneman v. City of Chicago*, 864 F.2d 463, 465-66 (7th Cir. 1988) (same); *Telecomm Tech. Servs., Inc. v. Siemans Rolm Commc'ns, Inc.,* 172 F.R.D. 532, 545-46 (N.D. Ga. 1997) (same).

regarding non-discrimination of American Express card transactions or to

"discontinue accepting American Express."  (*See* Class Plaintiffs' Brief in Support

of Final Approval at 38 (DA _____).)  The settlement also "locks in" the terms of

the DOJ's consent judgment with Visa and MasterCard (*id.* at 30), while American

Express continues vigorously to contest the DOJ's claims.  In short, Class

Plaintiffs have said, and the District Court agreed, that one of the benefits of this

settlement is that it would put pressure on American Express to follow suit.  These

conflicts prevent the Class Plaintiffs from being able to represent American

Express in releasing *any* claims (regardless of whether those claims arise in its

capacity as a merchant, as a competitor, or otherwise) or otherwise acting on behalf

of American Express.

     The conflict between Class Plaintiffs and American Express is precisely the

type that courts have considered fundamental.  In *In re Joint Eastern & Southern

District Asbestos Litigation*, 982 F.2d at 739, this Court held that the inclusion of

both health claimants and asbestos manufacturers—who "have been adversaries for

many years in thousands of lawsuits in courts throughout the country"—in a single

Rule 23(b)(2) non-opt-out settlement class violated the typicality and adequacy of

representation requirements of Rule 23(a)(3) and (4).  The Court found that the

interests of these two groups were "profoundly adverse to each other" and that the

conflict was "overwhelming."  *Id.  See also Allen v. Dairy Farmers of Am., Inc.*,

279 F.R.D. 257, 274 (D. Vt. 2011) (putative class members fundamentally adverse to class representatives who sought to "recover from, punish, and prohibit" the activities of those putative class members); *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280-81 (11th Cir. 2000) (reversing class certification of opt-out class where "the class includes those who claim harm from the very same acts from which other members of the class have benefitted").  The fact that Class Plaintiffs, who would owe a fiduciary duty to American Express as an absent class member, have endorsed a settlement that provides incentives to merchants to breach contractual provisions of, or to stop doing business with, American Express shows that Class Plaintiffs cannot adequately represent American Express in *any* capacity.

Without reference to American Express or the fundamental conflict that American Express identified in its objection, the District Court erroneously stated that "all merchants have the same interest in being able to inform cardholders at the point of sale of the acceptance costs of their credit cards and to either steer them to lower-cost alternatives or recoup the cost of acceptance."  (Dec. 13, 2013 Opinion at 46 (SPA 51).)  While this may be true for those merchants in the injunctive relief class that interact in the payment industry solely as merchants, it is *not* true for American Express or its subsidiaries.  As American Express Senior Vice President Stephen McCurdy declared, American Express's policy is to "prevent discriminatory treatment of American Express Cardmembers and

discriminatory surcharging of consumers who wish to use the American Express Card, not to encourage it.  This policy extends to the entire American Express organization, including the operations in which American Express and/or its subsidiaries act as merchants."   (McCurdy Decl. ¶ 13 (DA ____).)

The fact that defendants' rules "apply generally" to American Express is irrelevant to the fundamental conflict between American Express and the class. Before the settlement proponents can satisfy Rule 23(b)(2), they must first satisfy the four requirements for a class action under Rule 23(a), including, among others, adequacy of representation under Rule 23(a)(4).  That element is plainly lacking here for the reasons discussed above.

Under the District Court's analysis, American Express is both a beneficiary of the Class Plaintiffs' efforts *and* a target against whom the Class Plaintiffs are seeking to exert leverage.  American Express is a beneficiary because, under the District Court's reasoning, the settlement is fair and adequate to the class, which includes the American Express subsidiaries that accept defendants' cards. However, the District Court made clear that approving the settlement "will assist in the effort to 'fix'" what some objectors have identified as "the American Express problem"—the fact that merchants who choose to accept American Express cards will not be able to surcharge in some instances due to the interaction of American Express's contract provisions and the way the settlement proponents here decided

23

to structure the settlement. (*See* Dec. 13, 2013 Opinion at 36-37 (SPA 41-42).)

The District Court believed that approving the settlement would isolate American

Express as the sole remaining network prohibiting discriminatory surcharging, and

would thus put pressure on American Express to abandon its policy. (*Id.* at 37

(SPA 42).) The adequacy of representation requirement under Rule 23(a)(4)

simply does not permit American Express to be both an "adequately represented

absent class member" and a "problem" that the Class Plaintiffs seek to fix through

their settlement.

### C.  Class Certification Violates the Commonality and Typicality Requirements of Rule 23(a)(2) and Rule 23(a)(3).

In addition to violating Rule 23(a)(4), Class Plaintiffs' failure to represent

adequately the interests of "multiple role" class members like American Express

also violates the related commonality and typicality requirements of Rule 23(a)(2)

and (3). As the Supreme Court recently explained:

> "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest."

*Dukes*, 131 S. Ct. at 2551 n.5 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

147, 157-58 n.13 (1982)). Thus, for the reasons that class certification violate the

24

adequacy of representation requirement of Rule 23(a)(4), certification also violates

the commonality and typicality requirements of Rules 23(a)(2) and (3).

## II.    THE SETTLEMENT NEGOTIATED BY THE CLASS REPRESENTATIVES IS CONTRARY TO AMERICAN EXPRESS'S INTERESTS.

### A.    American Express May Be Prejudiced if It Is Included in the Class Because of the Breadth of the Language of the Release.

American Express may be prejudiced if it is bound to the settlement

negotiated by the Class Representatives because the language of the release on its

face makes no distinction between claims arising in class members' capacities as

merchants and claims arising in any other capacity (such as a competing network,

issuer, acquirer, transaction processor, or any other way in which American

Express participates in the payment industry).  Thus, the settlement leaves open the

possibility that one of the defendants may in the future try to use the release to

extinguish claims held uniquely by American Express that are not shared by any of

the Class Representatives, in violation of established Second Circuit authority.

During the settlement approval process, Class Plaintiffs told the District

Court that "any claim arising in any capacity other than as a merchant, such as a

competitor network or an ATM operator, is not released."  (Class Plaintiffs' Brief

in Support of Final Approval at 45-46 (DA ____).)  Defendants stated that "there is

no merit to objectors' contentions that the releases would have the effect of barring

their claims based on injuries as payment network competitors or as ATM

operators." (Defendants' Reply Brief in Support of Final Approval at 33 (DA

____).) Defendants proposed revising the Class Settlement Order and Final

Judgment to state that the agreement and final judgment "do not bar an action by a

payment network to the extent that it asserts an injury as a payment network

competitor." (*Id*.) The District Court did not adopt this proposal and instead stated

that "it is sufficiently clear from both the *text and context* of the releases that these

class members are releasing only claims that merchants have alleged or could have

alleged in this case in their capacity as merchants." (Dec. 13, 2013 Opinion at 42

(SPA 47) (emphasis added).)

The District Court's refusal rested on a misapprehension of the law and

improperly compromised American Express's interests. It is the text of the

settlement, not the context of the settlement, that a future court will analyze to

determine whether the release applies to a dispute. "As the settlement agreement

constituted a contract, general principles of contract law must govern its

interpretation." *Goldman v. C.I.R.*, 39 F.3d 402, 405-06 (2d Cir. 1994) (citations

omitted).

The release is broad. On its face, it purports to apply to, among other things,

all claims that could have been alleged in this action based on or relating to any

horizontal agreement between or among Visa, MasterCard and the banks and the

future effect of any Rule (which is defined to include any "practice, procedure,

26

activity, or course of conduct relating" to defendants' cards) imposed by the defendants.  (Settlement Agreement ¶¶ 1(mm), 68, 68(d), 68(g), 68(h) (SPA 113, 169-72).)

In a competitive industry characterized by a history of anticompetitive conduct by Visa and MasterCard and billion-dollar settlements by Visa and MasterCard, the potential for prejudice to American Express is clear and substantial.  For example, Visa and MasterCard enacted and enforced exclusionary rules that prohibited their member banks from issuing American Express cards. The Department of Justice successfully challenged those horizontal restrictions as anticompetitive, and this Court affirmed.  *See United States v. Visa U.S.A., Inc.*, 163 F. Supp. 2d 322, 329 (S.D.N.Y. 2001) (finding that Visa's and MasterCard's exclusionary rules weakened competition and harmed American Express); *United States v. Visa U.S.A., Inc.*, 344 F. 3d 229, 240 (2d Cir. 2003).  Visa and MasterCard settled American Express's subsequent civil claims for billions of dollars.  Had the release here been in effect when American Express filed its claims, there is little doubt that the defendants would have sought to raise the release as a defense to American Express's claims.

### B.    Only Claims Typical of All Class Members Can Be Released.

Rule 23 does not permit class representatives to release claims of absent class members that they do not share.  "The Second Circuit has recognized that

27

when reviewing the fairness of a proposed class action settlement, the court must take 'special care . . . to ensure that the release of a claim not asserted within a class action or not shared by all class members does not represent 'an advantage to the class . . . [bought] by the uncompensated sacrifice of claims of members, whether few or many.'"  *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 89 (E.D.N.Y. 2007) (alterations in original) (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982)).  Thus, although "Plaintiffs in a class action may release claims that were or could have been pled in exchange for settlement relief," they are limited in doing so by the "adequacy of representation" and "identical factual predicate" doctrines.  *Wal-Mart Stores*, *Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005).   This Court has stated:

> "As Judge Weinstein has observed, '[t]he theory is that if the claims and defenses are typical then there will be every reason for the representatives to support their own claim and so advance the claims of others in a like position.'  This justification for permitting the representatives to sue on behalf of the class has no application to claims of class members in which the representatives have no interest and which, as shown here, they are willing to throw to the winds in order to settle their own claims."

*Nat'l Super Spuds*, 660 F.2d at 17 n.6 (2d Cir. 1981) (quoting *Rosado v. Wyman*, 322 F. Supp. 1173, 1193 (E.D.N.Y. 1970), *aff'd*, 437 F.2d 619 (2d Cir. 1970), *aff'd mem.*, 402 U.S. 991 (1971)).

In *National Super Spuds*, this Court observed that "named plaintiffs in a class action cannot represent a class of whom they are not a part, and can represent

a class of whom they are a part only to the extent of the interests they possess in common with members of the class." 660 F.2d at 17 (citation omitted). This Court rejected a settlement agreement that purported to release claims held by absent class members based on both liquidated and unliquidated contracts where the Class Representatives were only parties to liquidated contracts. *Id.* at 17-18. The Court found that the "inadequacy of representation provided by the named plaintiffs is apparent from examination of the settlement itself," which set recovery for both types of claims on the basis of class members' liquidated contracts. *Id.* at 18.

Courts assessing settlement agreements that purported to waive claims of certain class members in exchange for benefits to the rest of the class have rejected class settlements on this basis. For example, in *Karvaly,* Judge Glasser denied preliminary approval of a settlement involving a class of PayPal users because the proposed releases in the settlements extended to millions of PayPal users but only a small subset of those users would actually be entitled to the monetary relief. *Karvaly,* 245 F.R.D. at 89-90. Finding that the proposed settlement violated due process, Judge Glasser stated that this "Court, which owes a 'fiduciary duty to the non-representative class members who were not party to the settlement agreement,' will not permit the Eligible Class Members to bargain away the rights of other Class Members to assert legal claims unrelated to the present action against eBay

29

and PayPal for the sake of the Eligible Class Members' own pecuniary interests."
*Id.* (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 262 (S.D.N.Y. 1998)).
Similarly, in *Authors Guild v. Google Inc.*, 770 F. Supp. 2d 666 (S.D.N.Y. 2011),
Judge Chin, sitting by designation, declined to approve a proposed class action
settlement involving Google's efforts to digitize copyrighted literature for public
access because, *inter alia*, "the class plaintiffs have not adequately represented the
interests of at least certain class members."  *Id.* at 679 (noting, among other
conflicts, that academic author objectors had "interests and values" that differed
from those of the named plaintiffs, the Authors Guild and the Association of
American Publishers, which "are institutionally committed to maximizing profits"
(internal quotation marks omitted)).  *See In re Auction Houses Antitrust Litig.*, 42
Fed. App'x 511, 518, 2002 WL 1758897, at *7 (2d Cir. July 30, 2002) ("In the
twenty-one years since *Super Spuds*, we have never affirmed the approval of a
class action settlement which included the uncompensated impairment of non-class
claims unless the non-class claims were based on the *identical* factual predicate as
the class claims.")

In *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009), this
Court found that the plain language used by the settling parties in a class settlement
agreement was inconsistent with the parties' assurance that the settlement did not
release damages claims.  Rather than affirming the district court's approval, this

Court directed the district court on remand to require the parties to clarify the

language in the release to reflect their stated understandings.  Similarly, in

*National Super Spuds*, this Court rejected the argument that approval of a

settlement that on its face released claims not held by the class representatives was

harmless because another court may, in the future, interpret the settlement not to

release those claims:

> "While it is true that actual decision on this issue will rest with the
> New York courts, we must assume that they will interpret the
> settlement to mean what it says.  Experienced counsel knew precisely
> what they wanted to achieve and drafted appropriate language to that
> end.  The only plausible basis on which a New York court could hold
> that the language did not have its intended and clearly stated effect
> would be if it found that the district court had no power to approve a
> settlement of a class action that barred claims of class members not
> within the description of the class.  A federal court should determine
> for itself whether it has that power and may properly exercise it not
> pass over the question because a state court may assume the
> unenviable task of deciding that its act was a nullity."

660 F.2d at 16.

To be sure, nothing would preclude American Express from raising its

properly founded due process objection if and when the defendants in the future

seek to use the release in ways that they disavowed below.  Nonetheless, several

factors weigh in favor of protecting American Express from the risk of prejudice

now, rather than leaving it to a future court to vindicate American Express's rights.

Among other things, American Express cannot predict the forum in which the

release will be raised, whether it would be raised in response to claims brought by

31

American Express or counterclaims brought by American Express in an action started by one or more defendants, and whether the future court will give any weight to Judge Gleeson's understanding of the "context" of the release.

Thus, unless and until the text of the settlement agreement and the final order and judgment states that the release applies only to claims held in a class member's capacity as a merchant and not in any other capacity (including capacities as a competitor of any of the released parties, a payment network, a card issuer, a merchant acquirer, and a transaction processor), there is the risk of substantial prejudice to American Express if it is included in the class including, *e.g.*, that defendants could in the future attempt to interpret the release more broadly than the scope of the release as they have represented below.  To remove the prejudice, if the Court determines that American Express should remain part of the Rule 23(b)(2) class, the judgment below should be vacated and this Court should remand with instructions conditioning approval of the settlement on the release being changed to make clear that it applies only to merchant claims and not to other (*e.g.*, competitor) claims and to clarify the judgment to make clear that the release is limited to such claims.

**III.    BECAUSE THE RULE 23(B)(2) SETTLEMENT CLASS SHOULD NOT HAVE BEEN CERTIFIED, THE SETTLEMENT SHOULD NOT HAVE BEEN APPROVED.**

The settlement is dependent on the Rule 23(b)(2) class being certified as a non-opt-out class.  (*See* Settlement Agreement ¶¶ 1(vv), 2(b), 95(d), 96 (SPA 114, 118, 187, 190).)  Because the class should not have been certified for the reasons discussed in the preceding sections, the settlement itself should not have been approved by the District Court.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 865 (1999) (vacating appellate judgment that affirmed entry of final approval where settlement class was improperly certified); *Literary Works*, 654 F.3d at 257-58 (vacating district court's judgment granting final approval of class settlement where settlement class failed to satisfy the adequacy of representation requirement).  Thus, the settlement approval should be reversed and the matter should be remanded to the District Court for further proceedings to cure the defects in the certification of the class and in the approval of the settlement.

**IV.    ON REMAND, THE COURT SHOULD CONDITION FINAL APPROVAL ON REDEFINING THE CLASS SO THAT IT DOES NOT INCLUDE AMERICAN EXPRESS OR ITS SUBSIDIARIES.**

For the reasons discussed above, the Rule 23(b)(2) class should not have been certified so long as American Express and/or its subsidiaries are in the class, and the settlement should thus not have been approved.  The Court should therefore remand with instructions to condition certification of the class and final

33

approval of the settlement on redefining the Rule 23(b)(2) class such that it does not include American Express.  This can be accomplished by not including in the class any entity that would otherwise be a member of the class and that was a defendant, was under common ownership or control of any defendant, or is under common ownership or control of any defendant in any suit pending at the time that the settlement agreement was negotiated by other members of the class on grounds similar to any claims asserted here.

In *Amchem*, *Literary Works*, and *Central States*, the Supreme Court and this Court issued remand orders directing the district court to fashion subclasses so that the interests of objecting class members would be adequately represented. *Amchem*, 521 U.S. at 625-29; *Literary Works*, 654 F.3d at 254-58; *Central States*, 504 F.3d at 246-47.  In this case, a subclass is impossible.  Rule 23(c)(4) requires subclasses to independently satisfy the 23(a) class action requirements before they may be certified.  *See* Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.").  American Express is aware of few, if any, other such "multiple role" class members with interests congruent with American Express (and is not aware of any other class member that, like American Express, is being sued by other class members on theories similar to those brought in this case) and thus antagonistic with the remainder of the class such that there could be a basis for a subclass satisfying the

34

numerosity requirement of Rule 23(a). Instead, the only viable option to cure the Rule 23 inadequacies of the proposed class is to require that the class be redefined in such a way that it does not include American Express.

Rule 23(b)(2) classes can only require mandatory participation when the class members have been adequately represented. "When an action is certified under Rule 23(b)(2) . . . absent class members are not required to receive notice or to have the opportunity to opt-out of the suit. Due process requires only that class members be adequately represented." *EEOC v. Gen. Tel. Co. of Nw., Inc.*, 599 F.2d 322, 334 (9th Cir 1979) (citations omitted), *aff'd*, 446 U.S. 318 (1980). *See also Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001), *overruled in part on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (adequacy of representation will "generally safeguard absent class members' interests and thereby satisfy the strictures of due process" in a Rule 23(b)(2) action seeking class-wide injunctive relief). When the adequacy of representation requirement of class certification is not met—as it is not here—that class is not properly certified.

This Court should thus vacate the approval order and remand with instructions that the settling parties should modify the definition of the Rule 23(b)(2) class to not include any entity that would otherwise be a member of the class and that was a defendant, was under common ownership or control of any

defendant, or is under common ownership or control of any defendant in any suit pending at the time that the settlement agreement was negotiated by other members of the class on grounds similar to any claims asserted here.  This narrow modification would ensure that the class does not include any obvious antagonism internal in the class as a result of related suits between class members, such as the action pending against American Express before Judge Garaufis and that the Class Representatives can have adequately represented the absent members of the class.

Finally, this modification will permit the rest of the class to be properly certified and, should the parties decide to proceed, will allow for the resolution of the class's claims as contemplated in the Settlement Agreement.  Leaving American Express outside the class presents no risk that the defendants would be subject to claims seeking a different injunction than the one to which they have agreed.  For years, American Express has defended its non-discrimination provisions against antitrust challenges brought by the Department of Justice, the overlapping class, and individual merchant plaintiffs.  There is no realistic possibility that American Express would seek to enjoin similar non-discrimination rules of Visa and MasterCard.

Should the Court determine, however, that the non-opt-out class can be certified despite the antagonism within the class directed toward American Express, the inadequacy of representation of American Express's interests, and the

lack of commonality and typicality of the class, then at a minimum the Court should reverse and remand to require that any approval of the settlement should be conditioned upon alteration of the language of the release and the judgment to make clear that the release applies only to claims that might be brought in a merchant capacity and not in any other capacity, including that it does not cover claims brought in American Express's capacity as a competitor in the network services, card issuing, merchant acquisition, or any other businesses American Express engages in other than its conduct as a merchant.

## CONCLUSION

For the reasons set forth above, American Express Co., American Express Travel Related Services Company, Inc., Serve Virtual Enterprises, Inc., ANCA 7 LLC d/b/a Vente Privee, USA, AMEX Assurance Company, and Accertify, Inc., including on behalf of themselves and all parents, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, respectfully request that the District Court's order certifying the Rule 23(b)(2) class and approving the class settlement be reversed.

Dated:        New York, New York
              June 16, 2014

                            BOIES, SCHILLER & FLEXNER LLP


                            By      s/ Philip C. Korologos
                                    Philip C. Korologos
                                    575 Lexington Avenue
                                    New York, NY 10022
                                    Tel. (212) 446-2300
                                    Email: pkorologos@bsfllp.com

                                    *Attorneys for Objectors-Appellants*
                                    *American Express Co., American*
                                    *Express Travel Related Services, Inc.,*
                                    *Serve Virtual Enterprises, Inc., ANCA*
                                    *7 LLC d/b/a Vente Privee, USA,*
                                    *AMEX Assurance Company, and*
                                    *Accertify, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B)</u>

I HEREBY CERTIFY, pursuant to Fed. R. App. P. 32(a)(7)(C)(i), that:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,251 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Office Word 2003 in 14-point Times New Roman type style.

Dated:  June 16, 2014

By     s/Philip C. Korologos
Philip C. Korologos

*Attorney for Objectors-Appellants
American Express Co., American
Express Travel Related Services, Inc.,
Serve Virtual Enterprises, Inc., ANCA
7 LLC d/b/a Vente Privee, USA,
AMEX Assurance Company, and
Accertify, Inc.*